**In re COLUMBIA WESTERN, INC., Debtor.**

**Bankruptcy No. 95–4227–HJB.**

United States Bankruptcy Court, D. Massachusetts.

July 7, 1995.

Peter J. Stocks, U.S. Trustee.

Daniel C. Cohn, Massachusetts Counsel, Boston, MA, for debtor.

Steven M. Hedberg, General Counsel, Portland, OR, for debtor.

Mary De Nevi, Boston, MA, for the Creditors' Committee.

David A. Foraker, Portland, OR, for Edward Hostmann, Inc.

Frederick M. Boss, Salem, OR, for State of OR.

Joseph H. Baldiga, Worcester, MA, for Ganz Capital Management.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the "United States Trustee's Motion to Dismiss Chapter 11 Case or Transfer Case to an Appropriate Alternate Venue" (the "UST Motion"). The question presented is how the Bankruptcy Court should react when presented with a fact pattern predicted by those who decry forum-shopping.

## I. FACTS

Regrettably, the facts are not in relevant dispute.

On May 17, 1995, Columbia Western, Inc., an Oregon corporation, filed a petition in this Court under Chapter 11 of the Bankruptcy Code. In better days, the Debtor, a publicly traded holding company, owned and operated, together with various subsidiaries and affiliates, various environmental and hazardous waste disposal businesses. From early 1980 through May, 1995, the Debtor's headquarters were located in Portland, Oregon. Prior to May, 1995, the Debtor had no assets or place of business in the District of Massachusetts. All that changed rather recently. On or about May 15, 1995, the Debtor transferred approximately $10.7 million dollars from a bank in Oregon to a presumably grateful bank in Worcester, Massachusetts. At or about the same time, the Debtor executed a month to month lease in Worcester for limited office from which it does not operate. Two (2) days later, the Debtor filed the instant petition in the Western Division of this District.[1]

The Debtor's schedules indicate that, as of the date of the filing of the petition, the Debtor's primary business address was located in Oregon, books and records were located in Oregon, and the President and CEO and Board of Directors did not reside or do business in the District of Massachusetts. The Debtor enjoys approximately $11 million in assets. However, exclusive of the $10.7 million which recently travelled to Worcester from Oregon, the Debtor's only significant assets are (i) stock in a subsidiary doing business in Oregon, (ii) approximately $239,000 located in a bank account in Oregon, and (iii) a lease deposit of approximately $35,000 held by an Oregon lessor.

Exclusive of contingent and unliquidated claims, the Debtor owes approximately $27 million in unsecured debt, composed of $26.4 million to debenture holders and approximately $500,000 to trade creditors. The schedules also indicate that:

(1) of the Debtor's 20 largest creditors, and of the 10 creditors holding claims in excess of $1 million, only three (3) have offices in Massachusetts, all in Boston, set in the Eastern Division of this District[2];

(2) of the remaining seven (7) of those creditors holding claims in excess of $1

[1.] The City of Worcester, Massachusetts is located in the Western Division.

[2.] There may also be sizable unliquidated and/or contingent environmental claims, but those claimants are not located in the District of Massachusetts.

million, six (6) are located on the east coast of the United States or in Europe; and (3) of the Debtor's 456 shareholders, approximately one-third in number holding almost 60% of the shares are located in Oregon [3].

The Debtor's three (3) largest creditors (Fidelity Management and Research Company, Elser & Co., and Ganz Capital Management), whose claims are collectively 45 percent of the total debenture debt, prefer the venue of Worcester. In fact, Ganz Capital Management, has filed an objection to the UST Motion. The United States Trustee has objected to venue in the Western Division of this District. The State of Oregon Department of Environmental Quality (the "DEQ") and Edward Hostmann, Inc. ("Hostmann") [4], the successor liquidating trustee of Willamette, have filed joinders to the UST Motion, requesting transfer of the case to the District of Oregon.

The Court conducted a hearing on the UST Motion on June 27, 1995 and after hearing counsel for various parties, including the UST, the Debtor, the DEQ and Hostmann, the Court took the UST Motion under advisement.

## II. *DISCUSSION*

Section 1408 of title 28 provides:

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district-

(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

(2) in which there is pending a case under title 11 concerning such person's affiliate, general partner or partnership.

28 U.S.C. § 1408.

▮ It is clear that under § 1408, the Debtor filed its case in an improper District. Its domicile, residence, principal place of business and principal assets were all located in the District of Oregon during a greater portion of the one hundred and eighty (180) days preceding the commencement of the case. And its affiliate [5], Willamette, is a Debtor in a case pending there. The issue before this Court is not whether venue is appropriate under § 1408 in the Western Division of the District of Massachusetts. The issue is what to do about the improper venue.[6]

The parties have become encased in a dispute about whether the appropriate remedial statute is (i) 28 U.S.C. § 1406(a), the district court's change of venue statute applicable to improperly venued civil cases, or (ii) 28 U.S.C. § 1412, a change of venue statute expressly applicable to bankruptcy cases.[7]

---

**3.** Approximately 57% of the stock is owned by Willamette–Western Corporation ("Willamette"), a Portland company and a confirmed debtor (of a liquidating Plan) in an active Chapter 11 case in Oregon. That stock serves as collateral to the United States National Bank of Oregon (formerly the Debtor's largest secured creditor) for debts owed to that bank by Willamette and/or the Debtor's founder, Arthur Reidel.

**4.** Hostmann has asserted not only Willamette's stockholder interest, but also a claim against the estate after the netting of various intercompany transfers.

**5.** Section 101(2) provides in relevant part:

(2) "affiliate" means-

(A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor[.]

11 U.S.C. § 101(2).

**6.** Not raised by any of the parties is the propriety itself of filing a case in an improper venue. In an appropriate case in the future, this Court will consider, on motion of a party or sua sponte, whether the filing of a case by an attorney in a patently improper Division or District is a breach of Bankruptcy Rule 9011 or is otherwise sanctionable as a bad faith filing.

**7.** Section 1406(a) provides:

The district court of a district in which is filed a case laying venue in the wrong division

The UST claims that § 1406(a) is the only applicable statute in that § 1412 does not appear to deal with cases filed improperly in the first instance. The UST urges the Court to read 28 U.S.C. § 1404(a)[8] as the flip side of § 1406(a), the former providing for the transfer of cases whose venue is proper in the district in which the case is originally filed, with the latter providing for the transfer of improperly filed cases. In the UST's view, § 1412 supplements § 1404(a) and is not a substitute for § 1406(a). The UST also urges the Court to look to Bankruptcy Rule 1014(a)(2) which provides:

> Cases Filed in Improper District. If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the United States Trustee, and other entities as directed by the Court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

Fed.R.Bankr.P. 1014(a)(2).

The UST reminds the Court that § 1412 was enacted in the 1984 amendments, *see* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, § 102(a), 98 Stat. 333, 334, and that the predecessor statute, 28 U.S.C. § 1477, provided for the possible retention of improperly filed cases. The UST argues that by deleting the reference to *retention* when amending the statute, Congress intended to remove the retention option. *See* Fed.R.Bankr.P. 1014(a) Advisory Committee's Note (1987). Finally, the UST urges the Court to opt for transfer, rather than dismissal of the case and to be guided in that determination by the criteria suggested in the case of *In re Toxic Control Technologies, Inc.*, 84 B.R. 140, 143 (Bankr.N.D.Ind.1988), namely:

1) the proximity to the bankruptcy court of assets, creditors, the debtor, its principals, evidence and witnesses;

2) the economical and efficient administration of the estate;

3) the willingness of abilities of parties, debtor and creditors alike, to participate in the case or in adversary proceedings, vis a vis one venue over another;

4) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining their attendance;

5) the applicability of State law to the case and adversary proceedings;

6) the intertwined relationships between debtors;

7) the necessity for ancillary administration; and

8) a local interest in having a localized controversy decided at home.

*Id.* at 143.

The UST argues that application of the foregoing factors compels the conclusion that transfer to the District of Oregon is the only reasonable course of action.

■ The Debtor makes two (2) arguments in opposition to the UST Motion. First, the Debtor argues that venue is proper in the Western Division of the District of Massachusetts because "venue, unlike jurisdiction, may be founded on consent, even where the filing of the case does not meet the statutory venue criteria" (Debtor's Opposition, p. 3). The Debtor cites various cases, holding that parties can properly consent to an improper venue or can be deemed to consent if their objection is untimely made. *See e.g., Seattle–First National Bank v. Manges*, 900 F.2d 795, 799 (5th Cir.1990); *Hunt v. Bankers Trust Co.*, 799 F.2d 1060, 1068 (5th Cir. 1986); *Cambridge Co., Inc. v. Cotten (In re Trafficwatch)*, 138 B.R. 841, 844 (Bankr.

---

of a district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.
28 U.S.C. § 1406(a).
 Section 1412 provides:
 A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties.

28 U.S.C. § 1412.

8. Section 1404(a) provides:
 (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 28 U.S.C. § 1404(a).

E.D.Tex.1992); *In re Shapiro,* 128 B.R. 328, 332 (Bankr.E.D.N.Y.1991). This Court need not consider this first argument, because the consent suggested by the Debtor is not present. Pursuant to 11 U.S.C. § 307 [9], the United States is a party in interest in the case and he does not consent. Furthermore, neither Hostmann nor the DEQ consent. The Debtor would dismiss the view of the United States Trustee because he does not have an economic interest. But § 307 was intended to erase that argument. The Debtor also argues that neither the Hostmann nor DEQ views should be considered because each has a disputed, contingent or unliquidated claim. That argument is somewhat cynical. The Debtor listed each of those alleged creditors in its schedules as disputed. Having done so, the Debtor would have the forum to determine those disputes located several thousand miles away from the residence of the creditors and still deny them the right to complain. Both DEQ and Hostmann are parties in interest. *See In re FRG, Inc.,* 107 B.R. 461, 467–68 (Bankr.S.D.N.Y.1989). As such, their views should be heard. The Debtor also argues that the joinders filed by those creditors were filed untimely. The Debtor presumably relies on Local Rule 26(A)(3)(a). However, that rule does not speak to joinders, only objections. In view of the foregoing, the Court finds that each of the UST, Hostmann and the DEQ are parties in interest who have timely protested to venue being laid in the Western Division of this District.[10] In view of those protests, venue can no longer be described as enjoying the consent of all of the parties.[11]

Second, the Debtor argues that, pursuant to § 1412, the Court has the discretion to retain an improperly venued case, and that the Court should exercise that discretion to retain the instant case in the Western Division of this District. The Debtor focuses on the word "may" in § 1412 rather than on the word "shall" in § 1406(a) and on the permissive language in Bankruptcy Rule 1014(a)(2). The Debtor argues that § 1412 and § 1406(a) conflict as to the discretion available to the Court. The Debtor notes that § 1406(a) governs all civil cases, while § 1412 governs bankruptcy cases alone. Therefore, the Debtor urges the Court to employ the "commonplace rule of statutory construction that the specific governs the general", *see Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992), and opt for the application of § 1412 and its flexible approach. The Debtor relies further on an exhaustive analysis of the statutory framework and its history set forth in the case of *In re Lazaro,* 128 B.R. 168 (Bankr.W.D.Tex.1991). In the *Lazaro* case, the Court held that § 1412 alone governs the fate of an improperly venued case, and to the extent that Bankruptcy Rule 1014(a)(2) appears to restrict the flexibility of § 1412, the Bankruptcy Rule is an improper extension of the statute.

 This Court does not agree with a fundamental premise of *Lazaro* —that is, that § 1412 naturally conflicts with § 1406(a). Statutes should be read in a manner that attempts to reconcile them if possible and that avoids conflicting interpretations. *Sunshine Development, Inc. v. Federal Deposit Insurance Corp.,* 33 F.3d 106, 113 (1st Cir.1994) ("The preferred approach to statutory construction dictates that a reviewing court first determine if the perceived conflict between two laws is real."). Sections 1406(a) and 1412 can only be deemed conflicting if they cover the same subject matter. Yet, while § 1406(a) deals with an improperly venued case, § 1412 is silent as to its specific

---

**9.** Section 307 provides:

> The United States Trustee may raise and may appear and be heard on any issue in any case or proceeding under this title but may not file a plan pursuant to section 1121(c) of this title. 11 U.S.C. § 307.

**10.** At the hearing, the UST sought to introduce letters from other creditors with views similar to the UST. The Court excluded those writings, pursuant to Local Rule 26(A)(1).

**11.** Notwithstanding the mootness of the Debtor's consent argument, this Court confesses to be *extremely* troubled by the argument that § 1408 can be avoided by the grounding of mutual consent on the failure of creditors to object. Creditors frequently find it difficult to finance an objection because of financial pressures caused by the filing of the case itself. Increasing the physical distance between those creditors and the forum may eliminate the ability of those creditors to object.

application. Employing the same standard of statutory construction as that urged by the Debtor (the specific governs the general), the Court reads § 1406(a) as the more specific statute on the issue of improper venue. The interplay of the two statutes would, therefore, not be deemed conflicting and, in fact, consistent if § 1406(a) were read applicable only to improperly venued cases and § 1412 only to cases where venue is appropriate in the first instance, but transfer is appropriate "in the interest of justice or for the convenience of the parties." That construction would also be consistent both with the change from the former § 1477 and with Bankruptcy Rule 1014(a)(2). Finally, that construction would be consistent with a policy concern which the Debtor carefully avoids. Both the Debtor and *Lazaro* make the argument that the failure to empower a bankruptcy court to retain an improperly filed case presents the anomaly that a district may be appropriate for transfer, but not for retention. This Court believes that the Debtor has missed an important distinction. Section § 1406(a) requires only that the case be originally filed in the court of proper venue. That court may, of course, employ § 1412 to transfer the case in its discretion. Permitting a court of improper venue to make a decision to retain the case, improperly substitutes the judgment of one court for another and encourages forum shopping. If a debtor is correct that its case should more properly be conducted in a venue other than that mandated by § 1408, surely the court of proper venue will be persuaded and order the transfer. In the case at bar, the Debtor would have *this* Court determine that the interests of justice and the convenience of the parties dictate that the case should be conducted in the District of Massachusetts, and would deny the District of Oregon, where the Debtor conducted its business and where the case of an affiliate is pending, the right to make what would be a far more informed decision. That makes no sense. The Court, therefore, rules that, pursuant to § 1406(a), transfer or dismissal are the only available options. *See* Fed.R.Bankr.P.

1014(a)(2); *see also FRG, Inc.*, 107 B.R. at 468.

■ Pursuant to § 1406(a), the Court must then determine whether to transfer the case to the District of Oregon or dismiss it. Employing the relevant factors enumerated in the *Toxic Control* case, supra, transfer appears to be the proper result. The assets, many of the creditors, the debtor, its principals, and more of the evidence and witnesses appear to be located in Oregon[12]. Their proximity to the court in that district will promote a more economical and efficient administration of the estate, ease the availability of compulsory process and reduce its cost, and ensure the ability of parties to participate in the process in a court which they had every right to expect would be the appropriate forum. The pendency of the Willamette case in Oregon will better assist the Oregon Bankruptcy Court in determining the significance of the relationship between the Debtor and Willamette and transfer of this case to Oregon will also satisfy any local interest in having the business problems of a debtor with a business history in the District of Oregon resolved in the District of Oregon.

This Court recognizes that its refusal to retain improperly venued cases has its drawbacks. It denies commercial lessors in this District the occasion to lease vacant space to transient out-of-state Chapter 11 debtors. And this Court will be robbed of the opportunity to determine issues in cases with respect to which no one in the Western Division of this District has any interest whatsoever. But, on balance, enforcement of a rational venue scheme promotes the stability of bankruptcy practice in the District ... and preserves its dignity.

### III. CONCLUSION

The UST Motion is allowed and the case is ordered transferred to the United States Bankruptcy Court for the District of Oregon. Any hearings presently scheduled in the case are continued generally, pending further or-

---

12. The Court disregards the conveniently recent transfer to Massachusetts of the Debtor's funds and the lease of the empty office space. Any argument that those acts have relevance would not be made in good faith.

der of that court. A separate order will issue in conformity with this decision.