**In re N. PARENT, INC., Debtor.**

**N. PARENT, INC., Plaintiff,**

v.

**COTTER & COMPANY, Defendant.**

**Bankruptcy No. 97–42411–HJB.**
**Adversary No. 97–4254.**

United States Bankruptcy Court,
D. Massachusetts.

June 26, 1998.

Jonathan R. Goldsmith, Springfield, MA, for Debtors.

Paul Salvage, Springfield, MA, for Defendant.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is the "Defendant's Motion to Dismiss" this adversary proceeding filed by Cotter & Company ("Cotter").[1] In its complaint, the Debtor N. Parent, Inc. ("N. Parent" or the "Debtor") makes various claims against Cotter. Those claims are set forth in fourteen (14) different counts. Cotter argues that dismissal of all of Cotter's claims is required under Fed. R.Civ.P. 12(b)(3)[2] for improper venue, and relies on a forum selection clause allegedly contained in a franchise agreement between the parties (the "Member Agreement"). Alternatively, Cotter argues that, pursuant to a choice of law provision present in the Member Agreement, the relationship between the

parties is governed by Illinois law, and seven of the counts in the Debtor's complaint, all based on Massachusetts state law, must be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### I. *Procedural Posture and Standards*

■ Initially, this Court must consider whether a motion to dismiss under Fed. R.Civ.P. 12(b)(3) for improper venue is the appropriate method to enforce a forum selection clause in a pre-petition agreement. Although several courts have enforced forum selection clauses by granting motions to dismiss for improper venue,[3] the United States Court of Appeals for the First Circuit has not followed suit. Instead, the First Circuit has held that dismissal of a complaint based on a forum selection clause falls under Rule 12(b)(6) for failure to state a claim, rather than under Rule 12(b)(3) for improper venue. *Lambert v. Kysar,* 983 F.2d 1110, 1112 n. 1 (1st Cir.1993); *LFC Lessors, Inc. v. Pacific Sewer Maintenance Corp.,* 739 F.2d 4, 7 (1st Cir.1984); *see also Brandt v. Hicks, Muse & Co. Inc. (In re Healthco Int'l, Inc.),* 195 B.R. 971, 988 n. 69 (Bankr.D.Mass.1996). The First Circuit has maintained that a forum selection clause does not render venue improper per se, but "merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction." *LFC Lessors,* 739 F.2d at 6 (citing *Central Contracting Co. v. Maryland Casualty Co.,* 367 F.2d 341, 345 (3d Cir.1966)). Therefore, this Court must treat Cotter's motion to dismiss based on the forum selection clause as a request for dismissal under Rule 12(b)(6).

■ Before the Court then is a motion under Rule 12(b)(6) to dismiss (1) the entire complaint because of the forum selection

---

1. The Defendant indicates in its pleadings that its name has recently been changed to "TruServ Corporation." This Court will continue to refer to the Defendant as "Cotter" in order to avoid confusion with the name used by the Defendant in the agreements described below.

2. Fed.R.Civ.P.12 is made applicable to adversary proceedings in bankruptcy cases by Fed. R. Bankr.P. 7012.

3. *See Mitsui & Co. (USA), Inc. v. MIRA M/V,* 111 F.3d 33, 36 (5th Cir.1997); *R.A. Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996); *Frietsch v. Refco, Inc.,* 56 F.3d 825, 830 (7th Cir.1995); *Riley v. Kingsley Underwriting Agencies,* 969 F.2d 953, 956 (10th Cir.), *cert. denied,* 506 U.S. 1021, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992).

clause in the Member Agreement and/or (2) certain counts of the complaint grounded on Massachusetts law because of the choice of law provision in the Member Agreement. However, as set forth below, each of the parties has submitted affidavits and/or additional writings. This Court's reliance on those submissions requires yet another re-characterization of Cotter's Motion. Where, as in this case, materials outside the pleadings are presented to and not excluded by the court, Rule 12(b) requires that the Court treat the motion as one for summary judgment, and provide all parties with notice and the opportunity to present opposing materials. Fed.R.Civ.P. 12(b); *see Motzkin v. Trustees of Boston Univ.*, 938 F.Supp. 983, 992 (D.Mass.1996) (citing *Whiting v. Maiolini*, 921 F.2d 5, 6–8 (1st Cir.1990)); *see also Desrosiers v. Transamerica Financial Corp. (In re Desrosiers)*, 212 B.R. 716, 719 n. 1 (Bankr.D.Mass.1997). Those conditions have been satisfied here. As a result, with the dust settled, the motion before the Court is one for summary judgment, and will be determined under the standards of Fed. R.Civ.P. 56, made applicable to these proceedings by Fed. R. Bankr.P. 7056.

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; Fed. R. Bankr.P. 7056; *DeNovellis v. Shalala*, 124 F.3d 298, 305 (1st Cir.1997). "The moving party bears the burden of showing the 'absence of evidence to support the non-moving party's position.'" *M–R Sullivan Mfg. Co., Inc. v. Sullivan (In re Sullivan)*, 217 B.R. 670, 673 (Bankr.D.Mass.1998) (quoting *Weiss v. Blue Cross Blue Shield of Delaware*, 206 B.R. 622, 624 (1st Cir. BAP 1997)). If the moving party has properly supported its motion, the burden shifts to the non-moving party who must produce sufficient evidence to demonstrate a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Any disputed facts and inferences must be resolved by the court in favor of the party opposing summary judgment. *Fleet*

*Nat'l Bank v. H & D Entertainment, Inc.*, 96 F.3d 532, 537 (1st Cir.1996). This Court must therefore review the record in the light most favorable to the Debtor to determine whether the Debtor has set forth sufficient evidence to raise a triable issue with respect to any of the fourteen counts raised in its complaint. *See Motzkin*, 938 F.Supp. at 992. In that light, the Court now sets forth the factual background presented by the parties.

## II. *Factual Background*

Cotter is a Delaware corporation with its national headquarters and principal place of business located in Chicago, Illinois. Mot. to Dismiss at 2. Cotter is a cooperative enterprise, with its membership being the individual True Value ® hardware store owners ("Members"). *Id.* Over 99.9% of Cotter's voting stock and voting power is held by "True Value Retailer Members," and of its seventeen directors, fifteen are Members. *Id.* Further, Cotter's yearly profits are distributed to the Members, based on a percentage of their annual purchases of inventory from Cotter, in the form of promissory notes (payable or redeemable in credits and/or cash) or stock. *Id.*

On March 11, 1985, the Debtor's principal, Nancy L. Parent, and Francis Parent, "d/b/a Ludlow True Value Hardware," executed a Member Agreement with Cotter in order to establish a True Value hardware store in Ludlow, Massachusetts. Debtor's Suppl. Opp'n to Cotter's Mot. to Dismiss, Ex. A. The 1985 Member Agreement was accepted by the duly authorized agent of Cotter on April 29, 1985, *id.*, and generally reflected the corporate structure outlined above. It further provided:

This Agreement shall be automatically modified upon notice from the Company to the Member of any relevant change in the Certificate of Incorporation and/or By–Laws of the Company provided such change in each instance receives the affirmative vote of a majority of stockholders entitled to vote at the regular or special stockholder's meeting duly called and held for such purpose, and as modified, shall continue in force in aforesaid[,]

(the "Modification Provisions"). The 1985 Member Agreement did not contain either a choice of law provision or a forum selection clause.

In 1990, Nancy Parent entered into another Member Agreement with Cotter in order to open up a second True Value hardware store in Chicopee, Massachusetts. Compl. at 4. Nancy Parent operated the Chicopee hardware store from 1990 to 1992. *Id.* That store closed in 1992, as it was operating at a loss and was indebted to Cotter for approximately $65,000.00. *Id.* at 5.

In 1991, the Debtor, N. Parent, was formed as a Massachusetts corporation, with Nancy Parent as the President, Treasurer, and sole Director. Debtor's Br., Ex. A. On August 19, 1991, Nancy Parent, acting now as President of the corporation, executed a new Member Agreement with Cotter. Debtor's Suppl. Opp'n to Cotter's Mot. to Dismiss, Ex. B. The effect of the 1991 Member Agreement was to make N. Parent, as opposed to Nancy Parent individually, the new owner of the Ludlow True Value store and a Member.[4] *Id.* The 1991 Member Agreement was substantially similar to the 1985 Member Agreement, except that in the last line above

Nancy Parent's signature the following language was included: "This Agreement shall be governed and interpreted in accordance with the laws of the State of Illinois."

Pursuant to the Modification Provisions of the 1991 Member Agreement, Cotter's Members have agreed to amend the Member Agreement in a fashion relevant to these proceedings on three separate occasions. In 1993, the Member Agreements were amended to provide that they could "only be enforced against either Member or [Cotter], in courts in Cook County or any Illinois county contiguous to Cook County, Illinois." In 1995, the Member Agreements were amended to provide that "the current form of the [ ... ] Member Agreement shall govern all past and present relations, actions or claims arising between [Cotter] and the Member." Finally, in 1997, the Member Agreements were amended to provide that: "This Agreement shall be enforced against either Member or Cotter, only in courts located in Cook County or any Illinois county contiguous to Cook County, Illinois, and only be interpreted in accordance with the substantive laws of Illinois without giving effect to its conflict of laws principles."[5]

---

**4.** The Debtor asserts that when it became a Member, Nancy Parent assigned her business assets from the Ludlow True Value hardware store to the Debtor. In its brief, the Debtor states: "[t]he assignment of Ms. Parent's business assets to the DEBTOR was belatedly acknowledged and ratified by [Cotter] in 1991, when [Cotter] transferred all of Ms. Parent's stock in [Cotter] and in various promissory notes from Ms. Parent to the DEBTOR corporation." Debtor's Br. at 6; *see also id.* at Ex. B (October 16, 1991 letter from Cotter & Company to Nancy L. Parent stating that the stock owned by Nancy L. Parent in the company were transferred to N. Parent, Inc., along with "[v]arious promissory notes").

Also, in an affidavit attached as Exhibit C to the Debtor's Supplemental Opposition to Defendant's Motion to Dismiss Complaint, Nancy L. Parent states that "[t]he last contract that was executed by and between the Debtor and Cotter & Company ... was executed in August, 1991." However, attached as part of Exhibit B to that pleading is a Member Agreement between the Debtor and Cotter, which bears what purports to be Nancy L. Parent's signature, dated October, 1991. Nevertheless, the sole difference between the August and October 1991 Member Agreements appears to be that the Debtor is reported to be "d/b/a Ludlow True Value HDW" in the

former and "d/b/a Steves True Value Hardware" in the latter. Since the two Member Agreements are substantively identical, this discrepancy appears to be irrelevant.

**5.** The above-quoted passages are taken from Cotter's motion to dismiss. However, Cotter did not submit copies of the form agreements containing this language and did not state when the votes were taken on these amendments, or when they became effective.

In Cotter's Reply to Debtor's Opposition to Defendant's Motion to Dismiss, Cotter included a copy of a proxy statement addressed to the Debtor in 1993. Among the six proposals for which votes were being solicited was the following: "To vote FOR or AGAINST the proposal to ratify the amendments to the Company's Member Agreements ." The proxy statement did not indicate the substance of the proposed amendments. However, the Debtor has not disputed that the 1993 amendment to the Member Agreement was the addition of a forum selection clause. The proxy form also notes that "[u]pon ratification of the proposed Member Agreement, all prior Member Agreements shall be automatically modified, effective June 1, 1993, to incorporate the amendments." The proxy statement further shows an affirmative vote for the amendments to the Mem-

On April 11, 1997, the Debtor, N. Parent, filed a Chapter 11 petition in this Court. On July 10, 1997, the Debtor filed a "Motion to Compel Performance Pursuant to an Executory Contract" ("Motion to Compel Performance"), seeking an order of this Court requiring Cotter to continue selling and delivering hardware inventory to the Debtor. After two hearings on the said motion attended by counsel for the Debtor and counsel for Cotter, the dispute was resolved through a stipulation of the parties approved by the Court.

On July 17, 1997, N. Parent filed the instant adversary proceeding, raising claims against Cotter in fourteen (14) counts.[6] Cotter responded with its Motion to Dismiss, accompanied by a supporting memorandum of law. The Debtor countered with its opposition, and a supplemental opposition and affidavit by Nancy Parent. The Defendant completed the pre-hearing string of pleadings with a reply to the Debtor's oppositions. A hearing was then conducted on the Motion to Dismiss, at which time the Court set a deadline for further briefs and took the motion under advisement. Each of the parties took advantage of the opportunity to file post-hearing briefs.

### III. *Positions of the Parties*

#### A. Cotter & Company

Cotter sets forth two reasons why this adversary proceeding should be dismissed in whole or in part. First, Cotter asserts that the forum selection clause binds the parties to litigate any disputes in Cook County, Illinois or any Illinois county contiguous to Cook County. Mot. to Dismiss at 6. Cotter states

that the Debtor is bound by the amendment which inserted a forum selection clause in the Member Agreement because, in accordance with the Modification Provisions in the Member Agreement signed by the Debtor, when a majority of the Members voted in favor of the amendment to include the forum selection clause, the Agreement was automatically modified to incorporate the amendment. Cotter's Suppl. Mem. of Law at 5.

According to Cotter, the forum selection clause benefits all of the Members, including the Debtor, because it prevents Cotter from incurring the expense of having to hire outside counsel all around the country to defend the company in lawsuits filed against it. Cotter's Suppl. Mem. of Law at 8. Cotter further notes that an overwhelming majority of the Members, including the Debtor, voted in favor of the forum selection clause. *Id.* at 5. In view of that clause, Cotter contends that the action as a whole should be dismissed.

Cotter also argues that Counts II and IV through IX of the Debtor's complaint should be dismissed based on the choice of law clause in the Member Agreement. That clause provides that Illinois law governs the issues raised in this litigation.[7] Mot. to Dismiss at 7. Cotter contends that, because all of the company's business occurs in Illinois, it is reasonable that Illinois law was chosen by the cooperative and its Members to govern their legal transactions. *Id.* at 8. Cotter maintains that having to comply only with Illinois law provides clarity to its Members and ultimately saves them money. Hr'g Tr. at 11. Therefore, Cotter alleges that those

---

ber Agreement and contains the signature of Nancy Parent.

**6.** In its complaint, the Debtor alleges that Cotter has (1) acted fraudulently and made misrepresentations to the Debtor; (2) engaged in unfair trade practices in violation of Mass. Gen. Laws Ann. ch. 93A § 9 (West 1969) and Mass. Gen. Laws Ann. ch. 109A § 9 (West 1996); (3) violated the automatic stay; (4) received fraudulent conveyances under 11 U.S.C. § 544 and Mass. Gen. Laws Ann. ch. 109A §§ 4, 5 (West 1996) (three counts); (5) charged the Debtor with excessive and usurious amounts of interest, in violation of Mass. Gen. Laws Ann. ch. 271 § 49 (West 1970) (three counts); (6) received prefer-

ential transfers under 11 U.S.C. §§ 547(b), 551 (two counts); (7) received an improper postpetition transfer under 11 U.S.C. § 549(a); and (8) breached a contract with the Debtor. N. Parent seeks damages in specified and/or unspecified amounts for each count. In addition, the Debtor requests that the Court equitably subordinate any claim or lien held by Cotter pursuant to 11 U.S.C. § 510(c).

**7.** In the Debtor's complaint, Count II (claim for unfair and deceptive trade practices), Counts IV, V, and VI (claims for fraudulent conveyances), and Counts VII, VIII, and IX (claims for usurious interest payments) are all based on Massachusetts state law.

counts of the Debtor's complaint based on Massachusetts state law are improper and should be dismissed.

## B. N. Parent, Inc.

The Debtor sets forth several arguments to oppose Cotter's Motion to Dismiss. First, the Debtor argues that the bankruptcy court is the proper forum for this litigation because Cotter waived its right to have the dispute heard elsewhere. The Debtor contends that because Cotter appeared at two hearings in this Court on the Debtor's earlier Motion to Compel Performance and failed to object to venue, Cotter waived its right to enforce the forum selection clause. Debtor's Suppl. Opp'n to Cotter's Mot. to Dismiss at 5.

Second, the Debtor contends that the three amendments to its Member Agreement with Cotter are not enforceable because the Debtor neither assented to nor received consideration for the said amendments. Debtor's Br. at 8. As to Cotter's assertion that the Debtor voted in favor of the 1993 amendment, the Debtor contends in its supplemental opposition that: "[t]he principal of the DEBTOR has never seen or signed [a 1993] amended agreement.... Since the DEBTOR never executed the 1993 AGREEMENT, the DEBTOR respectfully submits that the agreement is not enforceable as against the DEBTOR." Debtor's Suppl. Opp'n to Cotter's Mot. to Dismiss at 3. However, at the hearing on the instant motion, counsel for the Debtor conceded that the signature on a proxy form voting in favor of the 1993 amendments was that of Nancy Parent, but stated:

> I cannot represent to this Court that my client actually filled [in the blanks on the proxy form representing votes for the proposed amendments]. She doesn't recall filling those in. Your Honor, I would submit to you that this proxy card does not establish mutual assent to the amendment of the Member Agreement, ... and the validity of this modification, this alleged modification, is a question of fact, even if Your Honor were to apply Illinois law.

Hr'g Tr. at 17.

Third, the Debtor asserts that even if the Court finds that the 1993 amendment to the Member Agreement is effective, the Motion to Dismiss must still be denied because the forum selection clause "provides that the agreement by and between the DEBTOR and COTTER can only be *enforced* by either party in Illinois ... [and] [t]he DEBTOR's adversary complaint against COTTER does not seek to enforce the parties' agreement." Debtor's Suppl. Opp'n to Cotter's Mot. to Dismiss at 6.

Fourth, and finally, the Debtor maintains that, even if the Court found the 1995 and 1997 amendments otherwise binding on the Debtor, enforcement "would be unreasonable and unjust in view of the DEBTOR's current financial situation, and would violate the public policy that favors the centralization of bankruptcy proceedings in the bankruptcy court where the case is pending." Debtor's Suppl. Opp'n to Cotter's Mot. to Dismiss at 9.

## IV. *Discussion*

### A. Waiver

■ The Debtor initially argues that Cotter has waived its objection to venue in this Court. The Debtor cites no authority for this proposition, but asserts that Cotter's appearance at two hearings on the Debtor's motion to compel Cotter's performance under the Member Agreement was a submission to this Court's jurisdiction. Debtor's Suppl. Opp'n to Cotter's Mot. to Dismiss at 5. The Debtor argues that Defendant's failure to raise any opposition to jurisdiction or make mention of the forum selection clause in the Member Agreement during those two appearances constituted a waiver of its venue objection. *Id.*

In *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court was faced with a similar issue. In that case, the plaintiff had contracted with the defendant to tow a drilling rig from Louisiana to Italy. The contract contained a forum selection clause providing that any dispute be litigated in the English courts. Due to inclement weather, the contract was not completed and the rig was towed to Florida. The plaintiff subsequently filed suit against the defendant in Florida.

Prior to disposition of the defendant's motion to dismiss based on the forum selection clause, the defendant filed, in Florida, an action to limit its liability under admiralty law. That limitation would have been otherwise time-barred. The plaintiff attempted to characterize the defendant's action as a waiver of its objection to venue in Florida. The Supreme Court rejected the plaintiff's argument and held that defendant's actions were "solely a defensive measure made necessary as a response to [plaintiff's] breach of the forum clause in the contract." *Bremen,* 407 U.S. at 19, 92 S.Ct. 1907. The Court found that defendant's defensive action did not preclude its reliance on the forum selection clause in the contract. *Id.* at 20, 92 S.Ct. 1907.

In *Envirolite Enterprises, Inc. v. Glastechnische Industrie Peter Lisec Gesellschaft M.B.H.,* 53 B.R. 1007 (S.D.N.Y.1985), *aff'd,* 788 F.2d 5 (2d Cir.1986), a bankruptcy case, the District Court ruled that a seller's action in seeking relief from the automatic stay in the bankruptcy court in New York did not waive its objection to venue in that state. In *Envirolite,* the debtor entered into a contract with an Austrian seller to purchase certain equipment. The agreement contained a forum selection clause which required that any disputes between the parties be litigated in Austria. The debtor subsequently filed a voluntary Chapter 11 case in New York, and commenced an adversary proceeding against the seller for breach of contract, fraud in the inducement, and breach of warranty. The seller moved to dismiss for improper venue based on the forum selection clause. During the pendency of the seller's motion, the seller moved to lift the automatic stay to regain possession of equipment previously delivered to the debtor and which the seller claimed was not adequately protected. The debtor attempted to characterize the seller's action as a waiver of its objection to venue. However, the court relying on *Bremen,* held that the seller's motion for relief from stay was

purely a defensive action to protect its collateral and did not constitute a waiver to the parties' contractual forum selection clause. *Envirolite,* 53 B.R. at 1011.

This Court finds *Bremen* applicable and *Envirolite* well-reasoned. Cotter did not choose to litigate in this forum, and then, at a later time, change its mind. *See Envirolite,* 53 B.R. at 1011. On the contrary, it was the Debtor who chose to file a Chapter 11 case in this Court and then sought relief against Cotter. *Id.* Cotter simply acted to protect itself, and its defensive action can hardly be characterized as a waiver of its objection to venue. *Id.* Therefore, Cotter can not be said to have waived its right to object to venue in this forum.

### B. The Amendments to the Member Agreement

■ The Debtor argues further that even if Cotter did not waive its objection to venue, the forum selection clause and the choice of law clause are invalid because the Debtor never agreed to be bound by those clauses.

The Debtor did of course agree to be bound by the Member Agreement it signed in 1991. That Agreement provided that the Member would be bound by all amendments to the Member Agreement, so long as the amendments were approved by a majority of the Members. The 1991 Agreement further stated that it would "continue in force from year to year unless terminated by either party giving sixty (60) or more days written notice at any time to the other party of its intention to terminate this Agreement." In other words, if a majority of the Members voted to amend the Agreement, then each Member, whether abstaining or voting for or against an amendment would be bound by the amended agreement. Of course, any Member who did not want to be bound by the amendment had the option of terminating its Member Agreement with Cotter.[8]

---

8. Such an agreement is not as one-sided as it may first appear. A franchise relationship has significant economic advantages for both parties. As explained by the Supreme Court of New Jersey:

> The franchisor obtains a distribution system without the burden of day to day operations of

retail establishments and an opportunity to expand with less capital expenditure than would otherwise be required. The franchisee gains an advantage by owning [its] 'own' business with access to an established brand, testing marketing techniques and advertising. Both parties also have investments in the relation-

In this case, no evidence has been submitted that the Debtor ever disagreed with any of the amendments to the contract or ever attempted to terminate its Member Agreement with Cotter before the instant dispute arose. In fact, the only evidence submitted by either side regarding the amendments is the proxy statement submitted by Cotter showing that Debtor's principal voted in favor of the 1993 amendment which adopted the forum selection clause. And even if, as the Debtor now argues, its principal signed the proxy statement, but "does not remember" filling in the blanks, the consequence is the same. A party who voluntarily binds itself to a franchise relationship cannot disavow its obligation under the contract if it later becomes convinced it made a bad bargain. *See Leon v. Chrysler Motors Corp.*, 358 F.Supp. 877, 887 (D.N.J.1973). It is clear that the Debtor voluntarily sought to continue its relationship with Cotter over an extended period of time in spite of the amendments to the Agreement.[9]

In view of the foregoing, this Court finds that immediately prior to the commencement of this case, the Debtor was bound at least by the 1991 Member Agreement and the 1993 amendment. Although the Debtor claims that it had no notice of the 1995 and 1997 amendments, neither appears to have materially altered the forum selection clause in the 1993 amended Agreement.[10]

## C. Choice of Law in the Bankruptcy Court

■ The choice of law provision in the Member Agreement states that it shall be governed by the laws of the State of Illinois. "Contractual stipulations concerning choice of law clauses ordinarily are honored." *In the Matter of William J. Stoecker*, 5 F.3d 1022, 1028 (7th Cir.1993); *see also Lambert*, 983 F.2d at 1118 (noting that Massachusetts courts routinely enforce choice of law provisions unless the law chosen is unreasonable).[11] Bankruptcy courts have similarly

---

ship: the franchisee in time and money; the franchisor in reputation, property, image of quality of its products or services and marketing technique. Both are interested in the financial success of the venture.
*Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co.*, 86 N.J. 453, 461, 432 A.2d 48, 52–53 (Sup.Ct.1981) (citing M. Mendelsohn, *The Guide to Franchising* 17–24 (1970); Chisum, *State Regulation of Franchising: The Washington Experience*, 48 Wash. L.Rev. 291, 295–96 (1973)). In this case, any amendment to the Member Agreement was approved by a majority of the Members, who presumably voted in favor of the amendment because each Member of that majority believed that amendment to be beneficial to its own interests and to the success of the franchise.

Moreover, it seems obvious to this Court that requiring a unanimous vote for any amendment to the Member Agreement would be impractical and place a stranglehold on the company's ability to make decisions. The majority must bind the rest, or else differences could never be resolved. *Benintendi v. Kenton Hotel*, 294 N.Y. 112, 60 N.E.2d 829, 831 (1945); *see also Kentucky Package Store, Inc. v. Checani*, 331 Mass. 125, 117 N.E.2d 139, 142 (1954) (a majority in value of stockholders may regulate and control the lawful exercise of corporate powers); *Komanetsky v. Missouri State Medical Assoc.*, 516 S.W.2d 545 (Mo.App.1974) (dissenting stockholders are bound to acts of corporate directors ratified by a majority of the stockholders).

9. Even in bankruptcy, the Debtor has chosen to maintain its relationship with Cotter. It was the

Debtor who voluntarily filed a motion in this Court seeking an order compelling Cotter to continue supplying and delivering products pursuant to the Member Agreement.

10. Even if the 1995 amendment was found not binding and the 1993 amendment not to apply to transactions made prior to June 1, 1993, any material events that occurred prior to that date would in any event be sufficiently intertwined with events occurring thereafter to subject the claims to transfer. *See infra* part IV.G.

11. The Supreme Judicial Court of Massachusetts has held that Massachusetts state courts should give effect to the law reasonably chosen by the parties to govern their rights under contracts so long as there is no substantial conflict with Massachusetts public policy and the designated state has some substantial relation to the contract. *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 646 N.E.2d 741, 744 (1995) (citing In *Morris v. Watsco, Inc.*, 385 Mass. 672, 433 N.E.2d 886, 888 (1982), and Restatement (Second) of Conflict of Laws § 187 (1971 & rev.1989)). Likewise courts in Illinois have held that when an express choice of law is made, it will be given effect, so long as it does not violate fundamental Illinois policy and the state chosen has a significant relationship to the transaction. *Maher and Assoc., Inc. v. Quality Cabinets*, 267 Ill.App.3d 69, 203 Ill.Dec. 850, 856, 640 N.E.2d 1000, 1006 (1994); *see also Lyons v. Turner Construction Co.*, 195 Ill.App.3d 36, 141 Ill.Dec. 719, 722, 551 N.E.2d 1062, 1065 (1990).

upheld choice of law provisions so long as the law was reasonably chosen by the parties. *See In re Wakefield*, 217 B.R. 967, 970 (Bankr.D.Ga.1998); *In re Sanborn, Inc.*, 181 B.R. 683, 691 (Bankr.D.Mass.1995); *In re Amica, Inc.*, 135 B.R. 534, 544 (Bankr. N.D.Ill.1992). Since neither the Debtor nor Cotter has argued "that the application of Illinois law would seriously conflict with public policy, or that Illinois lacks substantial relation to the contract, the parties will be bound by their choice of Illinois law to govern this dispute." *Comdisco Disaster Recovery Serv., Inc. v. Money Management Sys., Inc.*, 789 F.Supp. 48, 51 (D.Mass.1992).

**D. Choice of Forum**

▬ The Court now turns to the issue of whether to give effect to the forum selection clause. "The law of the state or other jurisdictions whose law governs the construction of the contract generally applies to the enforceability [of a forum selection clause] determination unless 'a significant conflict between some federal policy or interest and the use of state law [exists].'" *Diaz Contracting, Inc. v. Nanco Contracting, Inc. (In re Diaz)*, 817 F.2d 1047, 1050 (3d Cir.1987) (quoting *General Eng'g Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 356 (3d Cir.1986)). Illinois has adopted the standard set forth by the Supreme Court in *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), to determine the enforceability of forum selection clauses. *See Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 210 (7th Cir.1993); *Calanca v. D & S Manufacturing Co.*, 157 Ill.App.3d 85, 109 Ill.Dec. 400, 510 N.E.2d 21, 23 (1987) .[12] In *Bremen*, the Supreme Court ruled that such clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907. As construed by the Court in *Bremen*, a forum selection clause is unreasonable if (1) its incorporation into the contract is the result of fraud or overreaching, (2) its enforcement would violate a strong public policy of the forum in which the suit is brought, or (3) the selected forum is so seriously inconvenient it deprives a party of its day in court. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir.1983), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983) (citing *Bremen*, 407 U.S. at 12–18, 92 S.Ct. 1907).

The Debtor does not allege that the forum selection clause was the result of fraud or overreaching. Instead, the Debtor focuses on the second and third prongs of the *Bremen* test and argues that enforcing the clause would either violate a strong public policy favoring the centralization of bankruptcy proceedings in the bankruptcy court where a debtor's case is pending or be unreasonable due to the Debtor's financial circumstances.

1. Public Policy and Jurisdiction

▬ Undoubtedly, public policy does favor centralization of bankruptcy proceedings in the bankruptcy court where a case is pending. *Envirolite*, 53 B.R. at 1013; *see also Societe Nationale Algerienne v. Distrigas Corp.*, 80 B.R. 606, 610–12 (D.Mass.1987); *Banque Francaise du Commerce Exterieur v. Rio Grande Trading, Inc.*, 17 B.R. 134, 136 (Bankr.S.D.Tex.1981). However, this policy is not so strong as to mandate that forum selection clauses be abandoned where the dispute is non-core.[13]

---

**12.** Massachusetts adopts the *Bremen* standard as well. *See Fireman's Fund Am. Ins. Cos. v. Puerto Forwarding Co., Inc.*, 492 F.2d 1294 (1st Cir. 1974); *Jacobson v. Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 646 N.E.2d 741 (1995).

**13.** 28 U.S.C. § 157 provides:
(b)(2) Core proceedings include, but are not limited to——
(A) matters concerning the administration of the estate;
(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under Chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
(C) counterclaims by the estate against persons filing claims against the estate;
(D) orders in respect to obtaining credit;
(E) orders to turn over property of the estate;

In the case of *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190 (3d Cir.1983), the debtor filed an adversary proceeding against the defendant for damages arising from alleged material defects in the product that the defendant had contracted to supply. *Coastal Steel*, 709 F.2d at 192–93. The contract between those parties contained a forum selection clause requiring all disputes to be litigated in an English Court. *Id.* In enforcing the forum selection clause, the court stated:

> [n]othing in the legislative history of the bankruptcy code has been called to our attention suggesting that Congress intended to make a change in public policy favoring forum selection clauses which is manifested in the Federal Arbitration Act … or in the common law announced in … *[M/S] Bremen* and similar state and federal cases.

*Id.* at 202. The court further noted that "[a]t best the grant of protective federal jurisdiction over proceedings related to title 11 is one circumstance to be taken into account in making the unreasonableness determination." *Id.*

The Third Circuit again addressed the conflict between contractual forum selection clauses and bankruptcy court jurisdiction in *Diaz Contracting, Inc. v. Nanco Contracting Corp. (In re Diaz Contracting Corp.)*, 817 F.2d 1047 (3d Cir.1987). In *Diaz*, a Chapter 11 debtor/subcontractor brought an adversary proceeding against its general contractor in the bankruptcy court in New Jersey to recover monies allegedly owed on a pre-petition contract claim. The defendant moved to dismiss the proceeding based on a forum selection clause in the contract which required venue in New York. The debtor attempted to keep the case in New Jersey

arguing that: (1) the proceeding was a core proceeding and Congress could not have intended to permit contractual forum selection clauses to override the policy of the Bankruptcy Code to concentrate core proceedings in the bankruptcy court; and (2) the enforcement of the clause was unreasonable because the cost and delay in pursuing the action in New York would adversely affect the success of its Chapter 11 reorganization. *Diaz*, 817 F.2d at 1051–52. The bankruptcy court decided to retain jurisdiction. The Third Circuit later reversed and held that the debtor had not met its burden of proving unreasonableness as required by the Supreme Court in *Bremen* in order to vitiate the forum selection clause. *Id.* at 1052–53. However, the Third Circuit never reached the issue as to whether a valid forum selection clause could override the bankruptcy court's core jurisdiction because the court summarily decided that the issue in that case was plainly non-core. *Id.* at 1051 n. 1.

Other courts have subsequently found that where a proceeding falls within a bankruptcy court's core jurisdiction, a forum selection clause will not override. In *Wheeling–Pittsburgh Steel Corp. v. Blue Cross Blue Shield of West Virginia, Inc. (In re Wheeling–Pittsburgh Steel Corp.)*, 108 B.R. 82 (Bankr. W.D.Pa.1989), the bankruptcy court refused to enforce a valid forum selection clause because it determined the proceeding to be core pursuant to 28 U.S.C. § 157(b)(2). In *Wheeling–Pittsburgh*, the debtor objected to the administrative priority status of three proof of claims filed by Blue Cross Blue Shield and filed counterclaims. The court found that "public policy and inconvenience require[d that the forum selection clause in the Blue Cross contract not be enforced since] public policy favors centralization of bankruptcy proceedings in the bankruptcy

(F) proceedings to determine, avoid, or recover preferences;
(G) motions to terminate, annul, or modify the automatic stay;
(H) proceedings to determine, avoid, or recover fraudulent conveyances;
(I) determinations as to the dischargeability of particular debts;
(J) objections to discharges;
(K) *determinations of the validity, extent, or priority of liens;*
(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;
(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury or wrongful death claims.

court where the case is pending." *Id.* at 85; *see also Mercury Masonry Corp. v. Terminal Constr. Corp. (In re Mercury Masonry Corp.)*, 114 B.R. 35 (Bankr.S.D.N.Y.1990) (bankruptcy court declined to enforce forum selection clause in core proceeding where enforcement of clause would violate public interest in centralizing bankruptcy proceedings); *Ellwood City Iron & Wire Co. v. Flakt, Inc. Envtl. Sys. Div. (In re Ellwood City Iron & Wire Co.)*, 59 B.R. 53 (Bankr. W.D.Pa.1986) (adversary proceeding deemed to be core had to be litigated in the bankruptcy court irrespective of forum selection clause).

This foregoing distinction between core and non-core proceedings is further exemplified in the recent case of *Kamine/Besicorp Allegany, L.P. v. Rochester Gas & Electric (In re Kamine/Besicorp Allegany, L.P.)*, 214 B.R. 953 (Bankr.D.N.J.1997). In that case, a Chapter 11 debtor, which owned and operated an electricity generating facility in New York, filed an adversary proceeding in the bankruptcy court for the District of New Jersey against a New York state public service corporation, seeking adjudication of its rights and obligations pursuant to a pre-petition contract. The complaint filed by the debtor asserted five claims: (I) enforcement of the automatic stay pursuant to 11 U.S.C. § 362; (II) enforcement of an executory contract pursuant to 11 U.S.C. § 365; (III) specific performance of the contract; (IV) breach of contract; and (V) breach of implied covenant of good faith and fair dealing. *Kamine/Besicorp*, 214 B.R. at 959. The bankruptcy court held that all of the debtor's claims were "core" proceedings and retained jurisdiction in spite of the parties' contractual forum selection clause. *Id.* On appeal, the district court reversed the bankruptcy court, in part, finding that claims (III)—(V) fell within the bankruptcy court's "related to"

jurisdiction pursuant to 28 U.S.C. § 1334(b) and were "non-core." *Id.* at 972. As a result, the bankruptcy court on remand was left to decide whether the remaining *non-core*, related claims would have to be tried in the forum chosen by the parties in their contract.

On remand, the bankruptcy court ultimately relied on *Diaz*, and ruled that the debtor, as the party objecting to the enforcement of the forum selection clause, failed to satisfy its burden of proving that the trial in the contractual forum would be so gravely difficult and inconvenient that the debtor would, for all practical purposes, be deprived of its day in court. *Kamine/Besicorp*, 214 B.R. at 973–74. The court also rejected the debtor's argument that enforcing the forum selection clause would "strain" the debtor's relationship with its creditors due to the delay occasioned by a transfer of venue. *Id.* at 974. The court therefore enforced the forum selection clause as to the non-core "related to" claims. *Id.*

This Court finds the foregoing cases well-reasoned and the distinctions drawn by them sound. Retaining core proceedings in this Court, in spite of a valid forum selection clause, promotes the well-defined policy goals of centralizing all bankruptcy matters in a specialized forum to ensure the expeditious reorganization of debtors. *Societe Nationale Algerienne*, 80 B.R. at 610. By enforcing the forum selection clause in non-core, related claims, where the public policy concerns are less clear, this Court also upholds the parties' right to contractually decide where to litigate their pre-petition contractual disputes. As a result, only those claims which are deemed to be core bankruptcy issues can remain in this Court; all non-core claims should be transferred or dismissed to give effect to the parties forum selection clause.[14]

**14.** This Court's holding finds further support from cases determining the conflict between arbitration clauses and bankruptcy court jurisdiction. As the Supreme Court has observed "an agreement to arbitrate before a specific tribunal is, in effect, a specialized kind of forum selection clause." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Several courts have therefore ruled that contractual arbitration clauses are unenforceable in bankruptcy with regard to core issues, but en-

forceable as to non-core issues. *See Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149 (3d Cir.1989) (arbitration clause found enforceable except as to trustee avoiding powers deemed to be core bankruptcy proceeding); *Hupp Indus., Inc. v. Envtl. Prod. Amalgamated, Inc. (In re Hupp Industries, Inc.)*, 157 B.R. 360 (Bankr.N.D.Ohio 1993) (arbitration clause enforceable in non-core pre-petition breach of contract action); *Bezanson v. Consol. Construc-*

## 2. "Enforcement" of the Contract

The Debtor next argues that, even if the forum selection clause is binding on the Debtor, it is inapplicable because, by its terms, the restriction is limited to litigation brought to "enforce" the Member Agreement. The Debtor contends that its suit cannot be characterized in that way. This Court disagrees.

"Courts have uniformly held that regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action[.]" *Advent Electronics, Inc. v. Samsung Semiconductor, Inc.*, 709 F.Supp. 843, 846 (N.D.Ill.1989). For example, in *Coastal Steel*, the plaintiff, a third party beneficiary to a contract for the purchase of machinery, argued that a forum selection clause in the contract did not apply to its tort claims against the defendant. *Coastal Steel*, 709 F.2d at 203. The clause provided that "any dispute arising [from the contract] shall be determined by the English Courts of Law." The Third Circuit enforced the forum selection provision for the tort claims holding that the agreement was "the basic source of any duty to [plaintiff]. There is no evidence suggesting that the clause was not intended to apply to all claims growing out of the contractual relationship." *Id.* The court reasoned that "[i]f forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleadings

[of tort claims]. [Plaintiff's] claims ultimately depend on the existence of a contractual relationship . . . and those parties bargained for an English forum." *Id.; see also Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688 (8th Cir.1997) *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600 (7th Cir.1994); *Interamerican Trade Corp. v. Companhia Fabricadora de Pecas*, 973 F.2d 487 (6th Cir.1992); *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir.1988); *Crescent Int'l, Inc. v. Avatar Communities, Inc.*, 857 F.2d 943 (3d Cir.1988); *Bense v. Interstate Battery System of Am., Inc.*, 683 F.2d 718 (2d Cir.1982).[15]

All of the claims asserted by the Debtor are ultimately based on alleged breaches of the franchise agreement by Cotter. Although the adversary proceeding filed by the Debtor does not seek to "enforce" the franchise agreement, the Debtor's claims arise directly from its contractual relationship with Cotter and are, therefore, subject to the forum selection clause in the franchise agreement.

## 3. Unreasonableness of the Forum Selection Clause

Finally, the Debtor attempts to argue that under the third prong of the *Bremen* test it would be unreasonable to enforce the forum selection clause in the Member Agreement because it would cause an undue hardship on the Debtor to have to litigate this case in Illinois.[16]

tors & Builders (In re P & G Drywall and Acoustical Corp.), 156 B.R. 704 (Bankr.D.Me.1993) (same); In re Guild Music Corp., 100 B.R. 624 (Bankr.D.R.I.1989) (arbitration clause not enforceable in core bankruptcy matter); Double TRL, Inc. v. F.S. Leasing, Inc. (In re Double TRL, Inc.), 65 B.R. 993 (Bankr.E.D.N.Y.1986) (same); Coar v. Brown, 29 B.R. 806 (N.D.Ill.1983) (same).

**15.** Some courts have found that certain types of actions may not arise from the litigants' contractual relationship and therefore are not bound by forum selection clauses. In *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d. Cir.1993), the Second Circuit held that "where a plaintiff sues for copyright infringement and asserts no rights under a contract with defendant containing a forum selection clause, the forum selection clause has no effect." *Corcovado*, 981 F.2d at 682; *see also Cheever v. Academy Chicago Ltd.*, 685 F.Supp. 914, 917 (S.D.N.Y.1988) (fo-

rum selection clause in publishing agreement did not determine forum for plaintiff's copyright infringement action against publishing company). These courts determined that the forum selection clause did not apply because the plaintiff was not attempting to assert contractual rights arising from the agreement. *Corcovado*, 981 F.2d at 682. However, both cases have faced some criticism for their narrow interpretation of the scope of forum selection clauses. *See Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 603 (7th Cir.1994); *Graham Technology Solutions v. Thinking Pictures, Inc.*, 949 F.Supp. 1427, 1433 (N.D.Cal.1997).

**16.** For a thorough discussion of the difficulty franchisees face when a forum selection clause is enforced see Donald B. Brenner, *There is a Developing Trend Among Courts of Making Choice of Forum Clauses in Franchise Agreements Presumptively Invalid*, 102 Com. L.J. 94 (1997).

The Debtor "faces a heavy burden in showing that trial in the selected forum is so 'seriously inconvenient.'" *Arrow Plumbing and Heating, Inc. v. North Am. Mechanical Serv. Corp.,* 810 F.Supp. 369, 372 (D.R.I. 1993). Under the Supreme Court's reasoning in *Bremen* the Debtor must demonstrate that "trial in the contractual forum will be so gravely difficult and inconvenient that [it] ... will for all practical purposes be deprived of [its] day in court." *Bremen,* 407 U.S. at 18, 92 S.Ct. 1907.

The Debtor has not met that burden. Its argument essentially rests on the mere fact that it is in bankruptcy. However, the fact that a party is in bankruptcy is not sufficient to prevent enforcement of a contractual forum selection. *Arrow Plumbing,* 810 F.Supp. at 372. "Once again, *Diaz* is instructive. In *Diaz,* the debtor argued that the enforcement of the clause was unreasonable because the cost and delay in pursuing the action in New York would adversely affect the success of its Chapter 11 reorganization." *Diaz,* 817 F.2d at 1052. The Debtor further argued that because its current attorney was not admitted to practice in New York, it would be forced to hire another attorney, and would lose the benefit of the knowledge of this litigation gained by its present counsel. *Id.* The Third Circuit rejected the Debtor's argument and held that "[a]lthough [Debtor] arguably demonstrated some inconvenience in litigating in the contractual forum, its assertions are insufficient to meet its heavy burden of proving unreasonableness and injustice." *Id.* at 1052–53. The court further stated that "neither the bankruptcy court's intimate knowledge of nor [defendant's] concessions concerning [debtor's] precarious financial condition operates to discharge its burden of establishing grave inconvenience." *Id.; see also Envirolite,* 53 B.R. at 1014 (dismissing contract suit by plaintiff who was in bankruptcy pursuant to forum selection provision providing that all suits be brought in Austria); *Kamine/Besicorp Allegany,* 214 B.R. at 974 (transferring debtor's non-core claims to forum selected by the parties despite debtor's claim of financial difficulties).

Under these circumstances, this Court finds that the Debtor has not met its burden of establishing that enforcing the forum selection clause in this case would unduly burden the Debtor and deprive it of its day in court. The Debtor has not demonstrated that enforcement of the forum selection clause would be unreasonable, as defined in *Bremen.*

**E. Analysis of Specific Causes of Action**

Presumably in anticipation of the core/non-core distinction made above, it is not surprising that the Debtor has asserted that each claim in its complaint represents a core proceeding in bankruptcy. Cotter, on the other hand, denies that allegation and reasserts its position that these issues should be decided in Cook County, Illinois.

The determination of what is core and what is non-core has not always been easy. This Court faced similar issues in *Noonan v. Cellu Tissue Corp., CST (In re Palmer Trucking),* 201 B.R. 9, 17 (Bankr.D.Mass. 1996). The difficulty stems from the ambiguity in the language of 28 U.S.C. § 157(b). Section 157(b)(2) sets forth a non-exhaustive list of fifteen proceedings that Congress has deemed core. However, sections (A) and (O) are so broad that they "could be construed to include almost any matter relating to bankruptcy." *Resolution Trust Corp. v. Best Products Co., Inc. (In re Best Products Co., Inc.),* 68 F.3d 26, 31 (2d Cir.1995) (quoting *In re Ben Cooper,* 896 F.2d 1394, 1398 (2d Cir.), *vacated,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.1991)).[17] However, this seemingly open-ended set of core proceedings, is limited by the constitutional principles set forth in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

*Marathon* involved an adversary proceeding brought by a debtor-in-possession seek-

---

17. "Compare § 157(b)(2)(A) ("matters concerning the administration of the estate") and § 157(b)(2)(O) ("other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ...")." *Noonan v. Cellu Tissue Corp., CST (In re Palmer Trucking),* 201 B.R. 9, 17 n. 11 (Bankr.D.Mass.1996).

ing damages for an alleged pre-petition breach of contract. A plurality of the Supreme Court held that the proceeding could not be finally adjudicated by the bankruptcy court. The Court explained that while the restructuring of debtor-creditor relationships is at the core of the federal bankruptcy power, the adjudication of state-created private rights is not. *Marathon*, 458 U.S. at 71, 102 S.Ct. 2858. Accordingly, the Court determined that the defendant was entitled to have these "non-core" private rights, which could easily have proceeded in a non-bankruptcy court in the absence of bankruptcy, adjudicated by an Article III court. *Id.* at 84, 102 S.Ct. 2858.

Further distinctions have followed *Marathon*. In the case of *Arnold Print Works v. Apkin (In re Arnold Print Works)*, 815 F.2d 165 (1st Cir.1987), the First Circuit ruled that bankruptcy courts were empowered to finally determine suits filed by an estate representative to collect debts arising after the commencement of the bankruptcy case, but not empowered to finally determine suits relating to debts arising before commencement of the case. While the former was deemed to be core, the latter was deemed non-core. *Arnold*, 815 F.2d at 168.

However, a further complication was introduced by the fact pattern presented in *Ralls v. Docktor Pet Centers, Inc.*, 177 B.R. 420 (D.Mass.1995). In that case, also relating to claims arising under a franchise agreement, the accounts sought to be collected and the breaches complained of arose before, but continued after, the commencement of the bankruptcy case. Forced to choose or distinguish between core and non-core alternatives, the court ruled that all should be deemed non-core. Chief Judge Tauro reminded that

> [g]enerally, the determination between core and non-core can be made by reference to the source of authority for the challenged action. Clearly, if the source is the Code itself, the action is a core proceeding ... '[i]f the action would survive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or a district court, then it clearly involves a non-core matter.'

*Id.* at 424–425 (in part quoting *Mec Steel Bldgs., Inc. v. San Lorenzo Constr. Corp. (In re Mec Steel Bldgs., Inc.)*, 136 B.R. 606 (Bankr.D.P.R.1992), in turn quoting 1 Lawrence P. King et. al., *Collier on Bankruptcy* ¶ 3.01(1)(c)(iv) at 3–27 (15th ed.1991)). As this Court explained in *Palmer Trucking*, the *Docktor Pet Centers* court distinguished *Arnold Print Works*, by noting that in *Arnold Print Works*,

> all of the operative events occurred postpetition and, therefore, 'the cause of action arose during and concerned the administration of the estate.' *Docktor Pet Centers*, 177 B.R. at 426. In *Docktor Pet Centers*, the relationship between the parties began well before the bankruptcy case, while in *Arnold Print Works* the contract under which the debt arose itself arose postpetition. *Id.* at 426 n. 7. Therefore, the contract in *Arnold Print Works* grew out of efforts to manage the bankruptcy estate. *Id.* Finally, Judge Tauro cautioned that a court should avoid characterizing a proceeding as core if to do so would raise constitutional problems. *Id.* at 427 (quoting *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir.1986)). In so doing, Judge Tauro "echoed" a concern raised by Judge Young in *Kwiat v. Doucette*, 81 B.R. 184, 192 (D.Mass.1987) that too expansive a reading of § 157(b)(2)(*O*) was inappropriate and might create constitutional issues similar to those raised in the case of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *Docktor Pet Centers*, 177 B.R. at 426–27.

*Palmer Trucking*, 201 B.R. at 18.

In *Palmer Trucking*, this Court also agreed with the observation made by Judge Tauro in *Docktor Pet Centers* that even where severance of causes of action was possible to solve the jurisdictional dispute, caution should exercised and an action deemed non-core where the issue is a close question and there is a substantial risk of an awkward result (as where there is a danger of different results by different courts on the same fact pattern or where similar portions of the same dispute might be presented to a single reviewing court with different standards of

review). *Id.* at 18; *Docktor Pet Centers,* 177 B.R. at 427 n. 9.

In determining whether this Debtor's claims are core or non-core, this Court will follow the framework and policy set forth in *Docktor Pet Centers* and *Palmer Trucking.* This Court further recognizes that each of Debtor's fourteen causes of action will have to be separately analyzed to determine whether it falls within the bankruptcy court's core jurisdiction. *Docktor Pet Centers,* 177 B.R. at 425; *Hughes–Bechtol, Inc. v. State of Ohio (In re Hughes–Bechtol, Inc.),* 141 B.R. 946, 949 (Bankr.S.D.Ohio 1992).

### 1. Fraud, Deceit, Misrepresentation, Unfair and Deceptive Trade Practices

▮ In Counts I and II of the complaint, the Debtor contends that Cotter violated Mass. Gen. Laws. Ann. ch. 93A, § 9 (West 1969) and Mass. Gen. Laws. Ann. ch. 109A § 9 (West 1996) on account of Cotter's alleged fraud, deceit, misrepresentation, and unfair and deceptive trade practices. In brief, the Debtor maintains that after the Chicopee store closed in 1992, Cotter made representations to the Debtor to the effect that if the Debtor did not seek bankruptcy protection and continued to pay Cotter money owed on the Chicopee store debt, Cotter would continue to do business with the Debtor on certain specified terms. According to the Debtor, notwithstanding substantial payments made on the Chicopee store debt, Cotter subsequently changed its credit terms with the Debtor in a detrimental fashion. The Debtor asserts that Cotter's representations were false, deceitful, and ultimately misled the Debtor into paying Cotter $372,-000.00 towards the debt on the Chicopee store (for which the Debtor claims it was not truly liable) and caused the Debtor to refrain from filing for bankruptcy. The Debtor asserts that these claims are core proceeding under either § 157(b)(2)(E) (orders to turnover property of the estate) or § 157(b)(2)(O) (proceedings affecting (1) liquidation of Debtor's assets, or (2) the relationship between the Debtor and Cotter).

▮ It is well settled that the jurisdiction of the bankruptcy court to resolve turnover proceedings is core. *See* 28 U.S.C. § 157(b)(2)(E) and 11 U.S.C. § 542. However, it is equally well settled that turnover proceedings pursuant to § 542 are limited to those where liability on the underlying debt is not disputed. *Palmer Trucking,* 201 B.R. at 17 n. 10.; *Bezanson v. Consol. & Builders (In re P & G Drywall and Acoustical Corp.),* 156 B.R. 704, 706 (Bankr.D.Me.1993) (citing *M.S.V., Inc. v. Bank of Boston Western Massachusetts, N.A. (In re M.S.V., Inc.),* 97 B.R. 721, 728–29 (D.Mass.1989)). *See Weiner's Inc. v. T.G. & Y. Stores Co.,* 191 B.R. 30, 32 (S.D.N.Y.1996) (action to determine amount of a claimed debt that was disputed and unliquidated could not properly be styled as an action to turn over property of the estate); *Ven–Mar of Indian River, Inc., v. Hancock (In re Ven–Mar Int'l, Inc.),* 166 B.R. 191, 192 (Bankr.S.D.Fla.1994) (action could not be characterized as a turnover proceeding where dispute existed between the parties); *In re Mec Steel Bldgs.,* 136 B.R. at 610 (collection of a debt due the estate cannot be considered a turnover of property so long as there is some doubt as to the defendant's liability). Where, as here, the amounts owed to the Debtor are contested, the actions cannot be considered turnover proceedings under 11 U.S.C. § 542. As a result, Counts I and II of the Debtor's complaint cannot be considered core proceedings under § 157(b)(2)(E).

▮ The Debtor has also argued that Counts I and II are core proceedings, pursuant to § 157(b)(2)(O). Claims for fraud, deceit, misrepresentation, and unfair and deceptive trade practices are traditional actions at common law and arise entirely under state law. The use of § 157(b)(2)(O) for the assertion of jurisdiction over these private state law claims presents precisely the situation which gave Judge Young and Judge Tauro such great concern in *Kwiat v. Doucette* and *Docktor Pet Centers. See also Counts v. Guaranty Savings and Loan Assoc. (In re Counts),* 54 B.R. 730, 734–35 (Bankr.D.Colo. 1985) (lawsuit seeking damages for breach of contract, fraud, and usury found to be noncore proceeding). Section 157(b)(2)(O) can not be used as a "black hole" to turn traditional non-core proceedings into core proceedings.

## 2. Violation of the Automatic Stay

In Count III, the Debtor alleges that Cotter violated the automatic stay pursuant to 11 U.S.C. § 362 by attempting to terminate the Member Agreement postpetition and by liquidating stock owned by the Debtor without first obtaining relief from the stay from the bankruptcy court.

It is beyond dispute that proceedings brought pursuant to 11 U.S.C. § 362 are core. The automatic stay is central to the administration of bankruptcy as it represents "one of the most fundamental debtor protections provided by the bankruptcy laws." *In re James*, 120 B.R. 802, 809 (D.Pa.1990) (quoting H.R.Rep. No. 95–595 (1977), reprinted in 1978 U.S.S.C.A.N. 5787, 5963, 6296), *rev'd on other grounds, In re James*, 940 F.2d 46 (3d Cir.1991). While § 157(b)(2)(G) relates only to "motions to terminate, annul or modify the automatic stay," it is obvious that motions to "enforce" the automatic stay should enjoy the same status. Further, employing the First Circuit's holding in *Arnold Print Works*, Cotter's alleged violation of the automatic stay should be considered a core proceeding because it is based on conduct which allegedly affected property of the Debtor's estate, arises from the provisions of the Bankruptcy Code alone, and occurred entirely postpetition. *Arnold*, 815 F.2d at 168–71.

## 3. Fraudulent Conveyances

In Counts IV and V, the Debtor asserts that from March 25, 1993 to December 30, 1993, Cotter cashed in promissory notes and credits otherwise due the Debtor and applied that money to reduce the Chicopee store's debt. The Debtor also paid Cotter additional monies from its own accounts to reduce that debt. The Debtor alleges that as a result of these transfers Cotter received approximately $49,933.90. The Debtor asserts that these payments to Cotter are voidable under 11 U.S.C. § 544(b) pursuant to the Massachusetts Uniform Fraudulent Transfer Act, Mass. Gen. Laws. Ann. ch. 109A, §§ 4, 5 (West 1996), because the transfers were made without fair consideration and left the Debtor with unreasonably small capital with which to conduct its business and because the transfers were made when the Debtor was insolvent and/or rendered the Debtor insolvent. Therefore, the Debtor asserts that both Counts IV and V are core proceedings pursuant to § 157(b)(2)(H) (proceedings to determine, avoid, or recover fraudulent conveyances).

Section 157(b)(2)(H) does not distinguish fraudulent conveyance actions brought under § 548 from those brought under § 544(b) employing the state fraudulent conveyance statute. Nevertheless, this Court is comfortable in finding that, even in the absence of § 157(b)(2)(H), an avoidance action under § 544(b) would be deemed core. The Bankruptcy Code gives the trustee, or as in this case, the debtor in possession, a series of avoiding powers. Among these is section 544(b) which allows the debtor in possession to void fraudulent conveyances to the extent permitted by applicable state fraudulent conveyance laws. The Court of Appeals for the Ninth Circuit has observed that in a fraudulent conveyance action the trustee is acting pursuant to its duty under bankruptcy law to gather property into the estate on behalf of creditors to facilitate the restructuring of creditor-debtor relations. *Duck v. Munn (In re Mankin)*, 823 F.2d 1296, 1307 (9th Cir. 1987). As a result, the Ninth Circuit ruled that a fraudulent conveyance action pursuant to § 544 clearly arises under title 11 and is a core proceeding. *Id.*

Numerous courts have also found that avoiding actions brought pursuant to § 544 are core proceedings. *See Carlton v. Baww, Inc.*, 751 F.2d 781 (5th Cir.1985); *Mellon v. Delaware & Hudson Railway Co. (In Matter of Delaware & Hudson Railway Co.)*, 122 B.R. 887 (D.Del.1991); *Addison v. O'Leary*, 68 B.R. 487 (E.D.Va.1986); *Sandersville Prod. Credit Assoc. v. Douthit (In re Douthit)*, 47 B.R. 428 (M.D.Ga.1985); *Michaels v. Lomax (In re Skil–Aire Corp.)*, 142 B.R. 692 (Bankr.D.N.J.1992); *Moratzka v. Wencl (In re Wencl)*, 71 B.R. 879 (Bankr.D.Minn.1987); *see also* 1 *Collier on Bankruptcy* ¶ 3.02[b] (15th ed. rev.1996) ("While [o]ther avoiding actions, such as those arising under 544, . . ., are not included in the list of section 157(b)(2), there can be no doubt that these too, are core proceedings."). Based on the

weight of authority, this Court rules that an action brought under § 544(b) of the Bankruptcy Code is a core proceeding.

### 4. Usury Claims

■ In its complaint, the Debtor also asserts that between 1985 and 1992, the Defendant charged a thirty-six percent interest rate on the Debtor's outstanding invoices for purchases of inventory on account. Under the Massachusetts usury statute, persons charging interest rates exceeding twenty percent per annum are guilty of criminal usury unless the Massachusetts Attorney General has been informed of the parties' intent to engage in such a transaction. Mass. Gen. Laws Ann. ch. 271 § 49(d) (West 1970). The Debtor claims that the Defendant did not comply with the requirements of § 49(d), and, as a result, the interest rate charged by Cotter was illegal. The Debtor now seeks that this Court declare the debt due to Cotter void (Count VII), and/or order a refund of the excess interest either under the statute (Count VIII) or by determining the payments to be fraudulent conveyances (Count VI) and/or order a refund of *all* moneys paid to Cotter pursuant to those illegal transactions (Count IX). The Debtor also seeks damages on account of Cotter's actions for an amount in excess of six million dollars.

As discussed supra, fraudulent transfer claims brought pursuant to 11 U.S.C. § 544 are core proceedings.[18] But there is no basis for the assertion of core jurisdiction over the Debtor's other three counts based on the usury statute. The essential issue in counts VII, VIII, and IX is whether Cotter is liable under Massachusetts law for an alleged scheme to collect usurious interest from the Debtor. *See Marill Alarm Systems, Inc. v. Equity Funding Corp. (In re Marrill Alarm Systems, Inc.)*, 81 B.R. 119, 123 n. 8

(S.D.Fla.1987). These are at best pre-petition claims which arise entirely under state law. The only possible justification for conferring core jurisdiction would be pursuant to the catch-all provision of § 157(b)(2)(O) on the grounds that the Debtor's claims affect the debtor-creditor relationship. *Id.* If this Court granted core jurisdiction on this basis "virtually any claim which would increase the assets in the estate would entitle the bankruptcy court to ignore the constitutional proscription set forth in *Marathon.*" *Id.* This Court can not interpret section 157 so broadly. *See In re Counts,* 54 B.R. at 734–35 (claims for breach of contract, fraud, and usury were "related proceedings" and as such bankruptcy court was without jurisdiction to finally determine them). *But see Bennett v. Genoa Ag Center, Inc. (In re Bennett),* 154 B.R. 126 (Bankr.N.D.N.Y.1992) (action based on New York state usury law found to be a core proceeding under § 157(b)(2)(O)).

### 5. Preferential Transfers

■ Counts X and XI are for the recovery of payments as preferential transfers pursuant to 11 U.S.C. 547(b) and 551. 28 U.S.C. § 157(b)(2)(F) specifically identifies proceedings involving the determination and recovery of preferences as core proceedings. *See Schwinn Plan Comm. v. AFS Cycle & Co., Ltd. (In re Schwinn Bicycle Co.),* 190 B.R. 599, 605 (Bankr.N.D.Ill.1995); *Aero-Fastener, Inc. v. Sierracin, Corp. (In re Aero-Fastener, Inc.),* 177 B.R. 120, 136 (Bankr.D.Mass.1994); *Lingley v. Fastener House (In re Acme–Dunham, Inc.),* 45 B.R. 227, 229 (Bankr.D.Me.1984). Therefore, it is clear that counts X and XI of the Debtor's complaint falls within the core jurisdiction of this Court.

---

**18.** The Debtor has asserted that these fraudulent transfers occurred from 1985 to 1992. However, the Debtor only became an entity in Massachusetts in 1991. Therefore there is some question as to whether the Debtor can assert claims which are "owned" by Nancy Parent, individually. The Debtor responds that Nancy Parent assigned her business assets from the Ludlow True Value hardware store to the Debtor and as a result it can assert Nancy Parent's claims in this proceeding. Cotter claims that there has been no assignment. In its Motion to Dismiss, Cotter requests that the Court determine that none of the foregoing claims could exist for any period prior to September, 1991.

This Court finds that neither party has submitted sufficient evidence as to whether an assignment took place between Nancy Parent and the Debtor or whether such an assignment would be binding on Cotter. Therefore, a genuine issue of material fact remains.

### 6. Recovery of Postpetition Transfer

In Count XII, the Debtor seeks to recover money obtained by Cotter postpetition as a result of Cotter's liquidation of the Debtor's stock in alleged violation of the automatic stay. The complaint to avoid the disputed transfer and recover the assets involved invokes the postpetition recovery provision of 11 U.S.C. § 549. That section provides that the trustee, or in this case the debtor in possession (pursuant to § 522(h)), "may avoid a transfer of property of the estate ... that is not authorized under this title or by the court." 11 U.S.C. § 549(a)(1)(B). "The purpose of § 549 'is to ensure that similarly situated pre-petition creditors are treated even-handedly.'" *Adams v. Hartconn Assoc., Inc. (In re Adams)*, 212 B.R. 703, 714 (Bankr.D.Mass.1997) (quoting *Dave Noake, Inc. v. Harold's Garage, Inc. (In re Dave Noake, Inc.)*, 45 B.R. 555, 557 (Bankr.D.Vt. 1984)). This cause of action "arises under title 11, could not exist but in bankruptcy, and is intended to remedy improper administration of the case and the estate." *Otasco, Inc. v. Am. Manufacturers Mutual Ins. Co. (In re Otasco, Inc.)*, 110 B.R. 964, 967 (Bankr.N.D.Okla.1990). Any other rule would make it impossible for the bankruptcy court to protect the assets of the estate. *Global Int'l Airways Corp. v. Azima (In re Global Int'l Airways Corp.)*, 76 B.R. 700, 705 (Bankr.W.D.Mo.1987). Therefore, actions brought pursuant to § 549 are core proceedings under 28 U.S.C. § 157(b)(2). *See Braunstein v. Branch Group, Inc. (In re Massachusetts Gas & Elec. Co.)*, 200 B.R. 471, 472 (Bankr.D.Mass.1996) (actions to recover post-petition transfers pursuant to § 549 are within the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)).

### 7. Breach of Contract

█ In Count XIII, the Debtor brings a breach of contract claim. The Debtor contends that Cotter had conducted business on account with the Debtor from 1985 to 1994 and during that time, the parties developed a custom or practice which pursuant to the Uniform Commercial Code became a term and condition of the Member Agreement. The Debtor asserts that Cotter suddenly changed the terms and conditions under which it would sell and deliver products to the Debtor, and as a result breached the terms of the contract. The Debtor argues that Cotter's breach of contract caused the Debtor to suffer damages, although it does not specify the amount of damages and leaves that decision to the discretion of this Court.

The Debtor's breach of contract claim against Cotter is not a core proceeding. The claim does not invoke a substantive right created by the Bankruptcy Code. Instead, it invokes rights created under the Uniform Commercial Code as codified into Illinois state law. *See* 810 Ill. Comp. Stat. 5/1–101– 5/13–103 (West 1961). This is a claim that could exist outside of bankruptcy. The Debtor's claim is for damages resulting from a pre-petition breach of contract arising out of private rights between the parties and could just as easily have been brought in state court.

### 8. Equitable Subordination

█ Finally, in Count XIV, the Debtor seeks to have Cotter's claims equitably subordinated pursuant to 11 U.S.C. § 510(c). Under the principles of equitable subordination, a bankruptcy court may subordinate a creditor's allowed claim to another allowed claim. 11 U.S.C. § 510(c). Equitable subordination is invoked by bankruptcy courts where: (1) the claimant has engaged in some type of inequitable conduct; (2) the misconduct has caused injury to creditors or conferred an unfair advantage on the claimant; and (3) equitable subordination of the claim would not be inconsistent with the Bankruptcy Code. *Rodolakis v. Chertoff (In re 1236 Dev. Corp.)*, 188 B.R. 75, 81 (Bankr.D.Mass. 1995); *604 Columbus Ave. Realty Trust v. Capitol Bank and Trust Co. (In re 604 Columbus Ave. Realty Trust)*, 119 B.R. 350, 376 (Bankr.D.Mass.1990) (citing *In re Giorgio*, 862 F.2d 933, 938–39 (1st Cir.1988)); *see also Matter of Mobile Steel Co.*, 563 F.2d 692 (5th Cir.1977). Equitable subordination proceedings ultimately establish the respective rights of creditors to participate in the distribution of the estate and the resolution of these proceedings inevitably affects the priority of

claims in bankruptcy. *Am. Cigar Co. v. MNC Commercial Corp. (In re M. Paolella & Sons, Inc.),* 85 B.R. 965, 968 (Bankr. E.D.Pa.1988). As a result, most courts have found that equitable subordination proceedings, as embodied in § 510(c), are peculiar to bankruptcy law and are core issues which can only be decided in a bankruptcy setting. *In re Poughkeepsie Hotel Assoc. Joint Venture,* 132 B.R. 287, 292 (Bankr.S.D.N.Y.1991); *see also Murphy v. Nunes (In re Terrific Seafoods, Inc.),* 197 B.R. 724 (Bankr.D.Mass. 1996); *Alberto v. CIT Group/Equipment Financing, Inc. (In re Alberto),* 1990 WL 250332, at *6 (Bankr.N.D.Ill.1990); *In re Atlas Fire Apparatus, Inc.,* 56 B.R. 927, 934 (Bankr.E.D.N.C.1986); *In re Western World Funding, Inc.,* 52 B.R. 743, 762 (Bankr. D.Nev.1985); *In re Osborne,* 42 B.R. 988, 993 (W.D.Wis.1984). Nevertheless, the Debtor has apparently "jumped the gun." To date, Cotter has not filed a proof of claim with the Court. Since the Debtor has not listed Cotter with an undisputed liquidated and noncontingent claim in the Debtor's Schedules, Cotter may not assert a claim against the Debtor without filing such a proof of claim. *See* 11 U.S.C. § 1111(a); Fed R. Bankr.P. 3003(c). Absent Cotter's assertion of a claim, there is nothing to equitably subordinate. Count XIV should, therefore, be dismissed by the Court, *sua sponte,* under Fed. R. of Bankr.P. 7012(b)(6).

### F. The Final Tally and the Appropriate Disposition

▮▮▮ Based on the foregoing analysis, Counts I and II (fraud, etc.), VII, VIII and IX (usury) and XIII (pre-petition breach of contract) are non-core claims and fall subject to the forum selection clause. They can not be resolved in this Court, but must be dismissed or transferred to an appropriate court

in or contiguous to Cook County, Illinois. Counts III (violation of the automatic stay), IV and V (fraudulent conveyances), VI (fraudulent conveyances based on usury statute), X and XI (voidable preference) and XII (recovery of postpetition transfer based on alleged violation of the automatic stay) are core proceedings and could be resolved in this Court, notwithstanding the forum selection clause. Count XIV (equitable subordination) should be dismissed entirely.

Nevertheless, the analysis is not yet complete. The underlying disputed facts and law necessary to properly determine the issues presented in Counts IV and V (fraudulent conveyances), VI (fraudulent transfer based on usury claim), and X and XI (voidable preferences) (the "Related Core Claims") are inextricably intertwined with or duplicative of the facts and law necessary to determine the non-core fraud, breach of contact, and usury claims which are subject to the forum selection clause and must be transferred or dismissed. It would be inappropriate for this Court to determine those core issues, while transferring the non-core issues elsewhere. To have the parties try the same facts in different courts promotes neither judicial economy nor the efficient administration of the estate. There would also exist the risk of inconsistent results. *See Docktor Pet Centers,* 177 B.R. at 427; *Palmer Trucking,* 201 B.R. at 18.

▮▮▮ 28 U.S.C. § 1412 provides: "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interests of justice or for the convenience of the parties."[19] The use of 'district court' in § 1412 has been held to incorporate the bankruptcy court because the bankruptcy court is a unit of the district

---

19. A few courts have held that "related to" proceedings should be transferred pursuant to 28 U.S.C. § 1404(a). These cases focus on the fact that a "related to" proceeding would not be considered a case "under" title 11 as stated in § 1412. *Searcy v. Knostman,* 155 B.R. 699 (S.D.Miss.1993); *Couri v. Fisher (In re JCC Capital Corp.),* 147 B.R. 349 (Bankr.S.D.N.Y.1992); *Thomson McKinnon Securities, Inc. v. White (In re Thomson McKinnon Securities, Inc.),* 126 B.R. 833 (Bankr.S.D.N.Y.1991). These cases represent the minority view and are generally disfa-

vored. *See* 1 *Colliers on Bankruptcy* ¶ 4 .04[5][b] (15th ed. rev.1996) (A few courts rely on § 1404(a) to transfer venue of non-core proceedings "a conclusion [which is] not to be recommended."); *see also* Fed. R. Bankr.P. 7087 ("On motion and after a hearing, the court may transfer an adversary proceeding or *any part thereof* to another district pursuant to 28 U.S.C. § 1412 ...") This Court will determine the motion to transfer venue under the standards of 28 U.S.C. § 1412.

court, 28 U.S.C. § 151, and because a change of venue determination is considered to be a core matter. *A.J. Volpi Contractors, Inc. v. W–P Coal Co. (In re Wheeling–Pittsburgh Steel Corp.)*, 123 B.R. 537, 538 (Bankr. E.D.Pa.1991). "The decision on a motion for change of venue is within the sound discretion of the court." *In re 19101 Corp.*, 74 B.R. 34, 35 (Bankr.D.R.I.1987).[20] Factors which a bankruptcy court should consider in determining whether to order a transfer under § 1412 include:

(1) the proximity of assets, creditor, debtor, its principals, evidence and witnesses to the court;

(2) the economical and efficient administration of the estate;

(3) the willingness of abilities of parties, debtor and creditors alike, to participate in the case or in the adversary proceeding, vis a vis one venue over another;

(4) the availability of compulsory process for attendance of unwilling witnesses and the cost of obtaining attendance;

(5) the applicability of state law to the case and adversary proceedings;

(6) the intertwined relationships between debtors;

(7) the necessity for ancillary administration; and

(8) a local interest in having a localized controversy decided at home.

*In re Columbia Western, Inc.*, 183 B.R. 660, 663 (Bankr.D.Mass.1995) (citing *In re Toxic Control Technologies, Inc.*, 84 B.R. 140, 143 (Bankr.N.D.Ind.1988)). "The most important factor is said to be the 'economic and efficient administration of the estate.'" *In re Gurley*, 215 B.R. 703, 709 (Bankr. W.D.Tenn.1997) (quoting *In re HME Records, Inc.*, 62 B.R. 611, 613 (Bankr. M.D.Tenn.1986)).

This Court finds that Counts IV, V, VI, X and XI (the Related Core Claims) should be transferred, along with Counts I, II, VII, VIII, IX and XIII (the non-core claims), to the United States District Court for the Northern District of Illinois.[21] That transfer eliminates the risk of inconsistent results taken by different courts on the same set of facts and law. Other factors also militate in favor of transfer to that court. The economy of the Debtor estate's administration demands that the estate not pursue similarly based claims before two courts. The law to be applied is that of the state of Illinois. Several of the witnesses will undoubtedly be located in Illinois and more easily subject to compulsory process. And, critical for the estate, a transfer to the federal court in Illinois ensures that any issues related to the Bankruptcy Code will be determined by a court accustomed to dealing with the statute.

■ As for those counts which deal with the postpetition violation of the automatic stay, (Counts III and XII), those counts contain discrete core issues, not necessarily related to any issues contained in the non-core counts. They should therefore, remain here.

## V. *Conclusion*

For the reasons stated above, Cotter's motion, now styled as seeking summary judgment, is granted in part and denied in part. Count XIV is dismissed. Counts I, II, IV–XI and XIII shall be transferred to the United States District Court for the Northern District of Illinois. The remaining counts (III and XII) shall be retained by this Court for appropriate disposition. Finally, Cotter's motion to dismiss Counts II, IV, V, VI, VII, VIII and IX on the grounds that they are improperly based on Massachusetts law is denied without prejudice. Those issues

---

**20.** The parties' failure to suggest such an alternative stems from the positions taken by each (Cotter seeking to transfer or dismiss all counts under the forum selection clause; the Debtor seeking to leave all counts with this Court.) However, that failure is not an impediment to an appropriate result here. 11 U.S.C. § 105(a) provides:

"The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provi-

sion of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

11 U.S.C. § 105(a).

**21.** That court is resident in Cook County.

should not be determined by a court which cannot and should not determine the merits of the underlying action. Cotter may reassert them in the appropriate forum.

This Court will set a new pre-trial conference with respect to the resolution of Counts III and XII. A separate order and judgment shall enter in conformity herewith.