367 F.2d 341
 CENTRAL CONTRACTING COMPANY, a Corporation, and Housing
Authority of the City of Pittsburgh, to the Use
and Benefit of Central Contracting
Company, a Corporation, Appellants,
v.
MARYLAND CASUALTY COMPANY, a Corporation.
 No. 15487.
 United States Court of Appeals Third Circuit.
 Argued April 15, 1966.
Decided Oct. 6, 1966.
 
 Bresci R. P. Leonard, Pittsburgh, Pa. (Royston, Robb, Leonard, Edgecombe & Miller, Pittsburgh, Pa., on the brief), for appellants.
 John A. Metz, Jr., Pittsburgh, Pa. (Metz, Cook, Hanna & Kelly, A. Leonard Balter, Rubin & Balter, Pittsburgh, Pa., David Morgulas, M. Carl Levine, Morgulas & Foreman, New York City, on the brief), for appellee.
 Before McLAUGHLIN, GANEY and FREEDMAN, Circuit Judges.
 OPINION OF THE COURT
 FREEDMAN, Circuit Judge.
 
 
 1
 The question presented to us is whether a federal court in a Pennsylvania diversity action should decline to exercise jurisdiction because of the contractual provisions limiting the forum in which relief can be sought.
 
 
 2
 Plaintiff, Central Contracting Company, a Pennsylvania corporation, was employed as a painting subcontractor on the North View Heights Housing Project being constructed for the Housing Authority of the City of Pittsburgh, in Pittsburgh, Pennsylvania. It completed performance of its work and has been paid almost the entire contract brice of $258,402.65. Plaintiff now seeks $63,405.87 from Maryland Casualty Company, a Maryland corporation, which was one of the sureties for the general contractors on the Project.[1] This amount consists of a small balance due on the contract price and claims for extra work.[2] The general contractors and the other sureties were not joined as defendants. Plaintiff had earlier brought a separate action on the same claim against the general contractors in the Court of Common Pleas of Allegheny County. The case is still pending.
 
 
 3
 Defendant moved to dismiss the action under Rule 12(b)(6) on the ground that the complaint failed to state a claim upon which relief could be granted. Its motion also relied upon the provisions in the subcontract that it should be construed pursuant to the laws of the State of New York and that any action brought pursuant to it should be limited to the courts of New York County, New York. Defendant further moved for a stay of the proceedings pending arbitration, in reliance on the provisions of the contract for the arbitration of disputes, which was to be held within the City of New York subject only to the jurisdiction of the Supreme Court of the State of New York and the appellate courts of that state.
 
 
 4
 The court below granted the motion to dismiss on the ground that the contractual stipulation limiting jurisdiction to the courts of New York County was valid and reasonable. This action made it unnecessary for it to decide the motion to stay pending arbitration. Central Contracting Co. v. Maryland Casualty Co., 242 F.Supp. 858 (W.D.Pa.1965). Since both sides filed affidavits in support of their positions, which the court did not exclude, the motion to dismiss should have been treated as one for summary judgment under Rule 56, and we shall so consider it. (See Rule 12(b)).
 
 
 5
 Section 45 of the plaintiff's subcontract with the general contractors provides that the contract shall be construed under the laws of the State of New York and contains the subcontractor's agreement to limit actions thereunder to the courts of the County of New York. It provides: 'The rights of the parties shall be construed pursuant to the Laws of the State of New York. The Subcontractor agrees that it will not commence any action, whether in law or in equity, against the Contractor or its sureties on bonds, if any, because of any matter whatsoever arising out of the alleged breach or performance of this subcontract agreement, in any Courts other than those in the County of New York, State of New York, and the Subcontractor expressly waives any and all rights the said Subcontractor might have by reason of the aforesaid bond provisions, if any, or by reason of any other cause whatsoever, to bring said action in any other court. The rights herein given the Contractor shall also be deemed for the direct benefit of the aforesaid sureties, if any, with the same force and effect as if they were parties hereto.'
 
 
 6
 Additional light is shed upon this section by the provisions of the contract relating to arbitration. Section 54 provides that with certain exceptions all disputes arising out of the agreement shall be submitted to arbitration. Section 55 provides for the manner in which arbitration shall be carried out. After notice of demand for arbitration by either party each side is to select its arbitrator, and the two thus selected are to choose a third arbitrator. In default of either side naming its arbitrator the Supreme Court of the State of New York is to designate one. The decision of any two arbitrators is to be binding on the parties. Section 55 also provides: 'All arbitration proceedings shall be held within the City of New York, and shall be subject only to the jurisdiction of the Supreme Court of the State of New York, and the Appellate Courts of said State, whether it be with respect to the initiation of said arbitration proceedings, their conduct, or any proceeding in connection therewith, including the award of the arbitrators. The Subcontractor hereby expressly consents to the jurisdiction of the aforesaid Courts. * * *'
 
 
 7
 The validity of Section 45 of the subcontractor's contract recently was reviewed by the Supreme Court of Pennsylvania in the action by this plaintiff against the general contractors. The court there reviewed the earlier Pennsylvania decisions and announced the modern rule which is to prevail in Pennsylvania. 'The modern and correct rule is that, while private parties may not by contract prevent a court from asserting its jurisdiction or change the rules of venue, nevertheless, a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement in not unreasonable at the time of litigation.' Central Contracting Co. v. C. E. Youngdahl & Co., Inc., 418 Pa. 122, 133, 209 A.2d 810, 816 (1965).[3] The court then went on to consider the elements which are relevant in determining the unreasonableness of such a provision. 'Such an agreement is unreasonable only where its enforecement would, under all circumstances existing at the time of litigation, seriously impair plaintiff's ability to pursue his cause of action. Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things. It the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by his agreement.' 418 Pa. at 133-134, 209 A.2d at 816.[4]
 
 
 8
 We need not consider whether in this diversity case we are bound to apply the Pennsylvania rule, for both federal and state courts have increasingly in recent years recognized the same principle which the Supreme Court of Pennsylvania has now adopted.[5] It is becoming more widely recognized that for reasons of business or convenience the parties may have bargained that all litigation arising out of their complex activity under a contract shall be drawn into one jurisdiction. So long as there is nothing unreasonable in such a provision there is no basis for viewing it as an affront to the judicial power, which must be stricken down. On the contrary, it should be respected as the responsible expression of the intention of the parties so long as there is no proof that its provisions will put one of the parties to an unreasonable disadvantage and thereby subvert the interests of justice.
 
 
 9
 The Pennsylvania rule, therefore, represents the correct principle, and we accept it and apply it here. This brings us to the question whether the provision that the action must be brought only in the courts of New York County is unreasonable.
 
 
 10
 On the face of it there is no unreasonableness in the provision. Two of the three general contractors were New York corporations. The provision is tied in with the requirement that the rights of the parties should be construed pursuant to the laws of the State of New York and that disputes should be arbitrated in the City of New York subject to the judicial supervision and review of the Supreme Court of New York and the appellate courts of that state. Judge Marsh in the court below noted that the forum in New York is only 400 miles from plaintiff's home office and that this would hardly impose an unreasonable burden upon it. Affidavits by the parties present some fragmentary information on the subject but they are not enough to rise to the dignity of substantial evidence of unreasonableness. Under Pennsylvania law the burden is on the plaintiff to prove the unreasonableness of the provision. Central Contracting Co. v. C. E. Youngdahl & Co., Inc.,supra at 134, 209 A.2d at 816. Even if the Pennsylvania requirement as to the burden of proof is not binding upon us in a diversity case we are satisfied that this is the correct rule. Since the plaintiff had the burden of showing that the provision is unreasonable, the lack of proof is fatal to its claim. We may also add that the construction of the agreement and the arbitration provisions which still surround the litigation must be decided according to the law of New York and that its courts are the most appropriate instruments to carry out this function.
 
 
 11
 We are mindful that cases may be imagined in which the requirement of a contract limiting resort to a single forum may be the instrument of injustice. But such a provision does not oust the jurisdiction of the courts; in effect it merely constitutes a stipulation in which the parties join in asking the court to give effect to their agreement by declining to exercise its jurisdiction. There will always be open to either party the opportunity to present whatever evidence will move a court in the particular circumstances not to decline to exercise its undoubted jurisdiction. No such showing has been made in the present case.
 
 
 12
 Finally, plaintiff claims that it is not bound by the provisions of Section 45 of the contract. This it asserts on the ground that its president signed the contract without reading it after he was given only a few minutes to read it and was then asked to sign it on the representation that the contractors would apply it fairly and reasonably at all times. Affidavits of the defendant dispute this. But taking plaintiff's claim at its best it is inadequate to achieve the exclusion of Section 45 from its obligation. Plaintiff raised no objection to the contract, but acted pursuant to it after its execution. It completed performance under the agreement, received payments amounting to $243,081.97 pursuant thereto and now claims the balance. In addition, even if we enforced the representation that the contractros would at all times deal fairly and reasonably with plaintiff, we would be led back to the very question which we have just decided, i.e., whether the requirement that the action must be brought in the County of New York is fair and reasonable.
 
 
 13
 The Pennsylvania courts in Gianni v. R. Russell & Co., Inc., 281 Pa. 320, 126 A. 791 (1924), long ago declared that they intend to stand for the integrity of written instruments and rejected their earlier decisions which enforced a contemporaneous inducing oral promise even though it was within the subject matter of an integrated agreement. See also United Refining Co. v. Jenkins, 410 Pa. 126, 134, 189 A.2d 574, 578 (1963). They have held from the beginning that a party to a contract may not assert that he is not bound by it because he had an inadequate opportunity to read it. As far back as a century ago Chief Justice Gibson sitting at nisi prius said in language which has frequently been repeated: 'If a party who can read * * * will not read a deed put before him for execution; or if, being unable to read, will not demand to have it read or explained to him, he is guilty of supine negligence, which, I take it, is not the subject of protection, either in equity or at law.' Greenfield's Estate, 14 Pa. 489, 496 (1850).[6] 'It falls stale upon the ear', said Bok, P.J. in an opinion affirmed per curiam by the Pennsylvania Supreme Court in Thrasher v. Rothrock, 377 Pa. 562, 105 A.2d 600, 604 (1954), 'to be told that a formal contract was not read, or was hurriedly prepared or was signed in haste. Such things are no ground for reforming or invalidating a contract * * *.' The same rule has been reiterated by the New York courts.[7] It is epitomized in the statement of Cardozo, J., in Murray v. Cunard S.S. Co., Ltd., 235 N.Y. 162, 166, 139 N.E. 226, 228, 26 A.L.R. 1371 (1923): '(He) who omits to read takes the risk of the omission.'
 
 
 14
 Plaintiff therefore is bound by the provisions of its contract, which it has failed to show are unreasonable, or inoperative because of any representation. The effect of the provision, of course, is not to foreclose a consideration of the merits of plaintiff's case; on the contrary plaintiff will have an appropriate forum for its claim, either in arbitration or in a judicial proceeding.
 
 
 15
 The judgment of the district court therefore will be affirmed.
 
 
 
 [1]
 Defendant was surety on a performance bond and a labor and materialmen's bond along with two other sureties, each of whose limit of liability is in different amounts but all of whom agreed to be jointly and severally liable with each other and with the principal
 
 
 [2]
 The claim consists of $15,980.68 as the balance due under the original contract and two categories of claims for additional work consisting of $46,262.39 and $1,162.80
 
 
 [3]
 The adoption of this modern view by the Pennsylvania Supreme Court was foreshadowed in its earlier decision in Nippon Ki-Ito Kaisha, Ltd. v. Ewing-Thomas Corp., 313 Pa. 442, 170 A. 286, 93 A.L.R. 1067 (1934) in which the court held enforceable a contractual stipulation requiring a Pennsylvania corporation to arbitrate a dispute in New York. Similar agreements have also been upheld in this Circuit. See Monte Co. v. Southern Delaware County Authority, 321 F.2d 870 (3 Cir. 1963)
 
 
 [4]
 In the status in which plaintiff's suit reached it the Pennsylvania Supreme Court did not decide whether Section 45 was reasonable. The court reversed because the lower court had held that the action had been improperly commenced by foreign attachment against a public housing authority and remanded the case for further proceedings, which would include a consideration of this question
 
 
 [5]
 Wm. H. Muller & Co., Inc. v. Swedish American Line Ltd. & T.S.S. Co., Ltd., 224 F.2d 806 (2 Cir. 1955); Takemura & Co., Ltd. v. The S. S. Tsuneshima Maru, 197 F.Supp. 909 (S.D.N.Y.1961); Euzzino v. London & Edinburgh Ins. Co., Ltd., 228 F.Supp. 431 (N.D.Ill.1964); General Electric Co. v. City of Tacoma, 250 F.Supp. 125 (W.D.Wash.1966); Calzavara v. Biehl & Co., Inc., 181 So.2d 809 (La.Ct.App.1966); see National Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-316 (opinion of the court) and 326-327 (Black, J., dissenting) 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)
 Earlier cases such as Mittenthal v. Mascagni, 183 Mass. 19, 66 N.E. 425, 60 L.R.A. 812 (1903), had come to this view, but they were generally rejected until Chief Judge Learned Hand's concurring opinion in Krenger v. Pennsylvania R. Co., 174 F.2d 556, 560-561 (2 Cir. 1949), cert. denied, 338 U.S. 866, 70 S.Ct. 140, 94 L.Ed. 531 (1949). This opinion gave the impetus to the view that there should be no 'absolute toboo against such contracts' and that the test of their validity should be their reasonableness. The early common law rule had been that such provisions were attempts to oust the courts of jurisdiction and would therefore not be enforced. See generally 6A Corbin, Contracts 1445 (1962); 25 Fordham L.Rev. 133 (1956); 45 Yale L.J. 1150 (1936). Cases representing both this view and the modern rule are collected in an annotation to the Muller case in 56 A.L.R.2d 300 (1957).
 
 
 [6]
 See also Montgomery v. Levy, 406 Pa. 547, 550, 177 A.2d 448, 450 (1962); General Refrigerator & Store Fixture Co. v. Fry, 393 Pa. 15, 18-19, 141 A.2d 836, 838 (1958); Thrasher v. Rothrock, 377 Pa. 562, 105 A.2d 600, 604 (1954); T. W. Phillips Gas & Oil Co. v. Kline, 368 Pa. 516, 518, 84 A.2d 301, 302 (1951)
 
 
 [7]
 Amend v. Hurley, 293 N.Y. 587, 595, 59 N.E.2d 416, 419 (1944); In re Stone's Estate, 272 N.Y. 121, 124, 5 N.E.2d 61, 62 (1936); Pimpinnello v. Swift & Co., Inc., 253 N.Y. 159, 162-163, 170 N.W. 530, 531 (1930)