

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2001

# Salovaara v. Jackson Natl Life

Precedential or Non-Precedential:

Docket 99-5647

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Salovaara v. Jackson Natl Life" (2001). *2001 Decisions.* Paper 69.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/69

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed April 5, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-5647

MIKAEL SALOVAARA, individually and derivatively on
behalf of SOUTH STREET LEVERAGED CORPORATE
RECOVERY FUND, L.P.; SOUTH STREET CORPORATE
RECOVERY FUND I.L.P.; SSP PAR TNERS, L.P.;
SSP ADVISORS, LP; SSP, INC.,
        Appellants

v.

JACKSON NATIONAL LIFE INSURANCE COMPANY ,
a Company Organized Under the Laws of the
State of Michigan; LAZARD FRERES & CO.,
a Limited Liability Corporation Organized Under the
Laws of the State of New York

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 97-cv-01422)
Magistrate Judge: Honorable John J. Hughes

ARGUED June 1, 2000

BEFORE: SCIRICA, and NYGAARD, Circuit Judges, and
POLLAK, District Judge*

(Filed: April 5, 2001)

_____

* The Honorable Louis H. Pollak, District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by
designation.

Joseph L. Buckley, Esq. (Argued)
Sills, Cummis, Radin, Tischman,
 Epstein & Gross
One Riverfront Plaza
Newark, NJ 07102

 Counsel for Appellants
as to Jackson National Life
Insurance issues

Richard H. Epstein, Esq. (Argued)
Sills, Cummis, Radin, Tischman,
 Epstein & Gross
One Riverfront Plaza
Newark, NJ 07102

 Counsel for Appellants as to
Lazard Freres & Co. issues

Steven I. Cooper, Esq.
John H. Doyle, III, Esq. (Argued)
Anderson, Kill & Olick
1251 Avenue of the Americas
New York, NY 10020

Forrest B. Lammiman, Esq.
Randall Hack, Esq.
Lord, Bissell & Brook
115 South LaSalle Street
Chicago, IL 60603

 Counsel for Appellee
Jackson National Life

Thomas G. Rafferty, Esq. (Argued)
Cravath, Swaine & Moore
825 Eighth Avenue
Worldwide Plaza
New York, NY 10019-7415

 Counsel for Appellee
Lazard Freres & Co.

OPINION OF THE COURT

PER CURIAM:

INTRODUCTION

Plaintiff-Appellant Mikael Salovaara appeals from the
District Court's dismissal of the derivative action he
brought on behalf of several entities, described in more
detail below, against Defendant-Appellees Jackson National
Life Insurance company and Lazard Frer es & Co. As
explained below, we will dismiss Salovaara's appeal with
regard to Jackson because it is moot and will affirm the
dismissal order regarding Salovaara's complaint against
Lazard Freres & Co.

JURISDICTION

The District Court had jurisdiction pursuant to Section
27 of the Securities Exchange Act of 1934, 15 U.S.C.
S 78aa, and under 28 U.S.C. SS 1331, 1332, and 1367. The
parties consented to allow a Magistrate Judge to decide the
dispositive motion in this case, pursuant to Fed. R. Civ. P.
73 and 28 U.S.C. S 636. Because the Magistrate Judge
dismissed Salovaara's Third Amended Complaint, we have
jurisdiction pursuant to 28 U.S.C. SS 636(c) and 1291.

FACTS AND PROCEDURES

This appeal arises from the District Court's dismissal of
a derivative suit, alleging fraud in the sale of certain debt
securities. The plaintiff-appellant in this case is Mikael
Salovaara. He brought suit on behalf of himself,2 as well as
on behalf of the following entities: South Str eet Leveraged
Corporate Recovery Fund, South Street Corporate Recovery

_____

2. The claims that Salovaara brought in his individual capacity have
since been dismissed. He does not appeal that dismissal.

3

Fund (collectively "the South Street Funds"); SSP Inc.; and SSP Partners and SSP Advisors (collectively "the SSP LPs").[3]

SSP Inc. is the general partner of the SSP LPs. The SSP LPs are in turn general partners of the South Street Funds. The South Street Funds make investments by buying debt securities from various companies. A sale of debt securities by the South Street Funds to the Jackson National Life Insurance Company ("Jackson" or "JNL") is at issue in this case.

Two people are behind the SSP LPs and the South Street Funds: Salovaara and Alfred C. Eckert, III. Salovaara and Eckert each own 50% of the stock of SSP Inc. Eckert is a director of the corporation, while Salovaara is not. Salovaara and Eckert also own all the equity in the SSP LPs. Salovaara and Eckert used the SSP LPs to make investments in the South Street Funds. They cr eated these entities in 1991, but have since had a falling out. Salovaara was a limited partner of the SSP LPs at the time of the transactions at issue, although he is not today. Currently, the directors of SSP Inc. are Eckert, Gary Hindes, and Denise Hindes. Following a dispute and litigation between Salovaara and Eckert over control of the South Street Funds, the Hindes were given control over a majority of the South Street Funds assets. As a result, the Hindes controlled more than 95% of the Notes held by the South Street Funds, while Salovaara maintained contr ol over less than 5%.

In 1992, before Salovaara and Eckert had their falling out, the South Street Funds invested in the debt of Bucyrus-Erie International ("Bucyrus"), by securing financing for that company. In 1994, Bucyrus filed for relief under Chapter 11 of the Bankruptcy Code. A r eorganization plan for Bucyrus was confirmed in December of 1994. Under this plan, the South Street Funds r eceived notes issued by Bucyrus (the "Notes") as a r eplacement for the debt they had acquired in 1992. The South Str eet Funds also received 11% of the stock of the r eorganized company. By late 1995, the South Street Funds held Notes issued by

_____

3. LP is short for Limited Partnership.

Bucyrus with a face value (or "par value") of more than $55 million.

In late 1995, the Hindes decided to sell the Notes under their control, and hired defendant-appellee Lazard Freres & Co. ("Lazard") to assist them by pr oviding advice concerning the actual market value of the Notes and the reasonableness of any offers made to pur chase them.4 Lazard entered into negotiations on behalf of the South Street Funds with the other defendant-appellee in this case, the Jackson National Life Insurance Company. On February 28, 1996, the Hindes sold the majority shar e of the Notes to Jackson, through Lazard, on behalf of the South Street Funds. Jackson paid a price of approximately 94% of the par value of the Notes. Lazard, as the broker, received approximately 1% of this value as a commission. On February 29, 1996, Salovaara sought to enjoin this sale in the U.S. District Court for the Southern District of New York. The court denied this relief, and the trade settled on March 4, 1996.

Salovaara claims that Jackson engaged in insider trading when it bought the Notes, assisted by Lazard. He states that Jackson was the "controlling shar eholder" of Bucyrus at the time of the transaction, and that it appointed two of its nominees to Bucyrus' Board of Directors. He claims that as a result of its ties with Bucyrus, Jackson knew in early 1996 that Bucyrus was considering refinancing the Notes at their par value. Jackson further knew that Bucyrus' business prospects had improved dramatically, and that it was appointing a new and respected head for the company. This information was not available to the general public at the time.

Salovaara claims that Jackson misappropriated inside information from Bucyrus, from which it learned the Notes were worth their face value and not 94% of that value. Salovaara states that the South Street Funds only consented to sell the Notes to Jackson at 94% of their par value because it did not realize they wer e actually worth

_____

4. Even though the Notes had a par or face value of more than $55 million, their market value depended upon the likelihood that Bucyrus would actually be able to repay this debt.

more than that on the market. Salovaara claims that Lazard told the Funds that 94% of par value was a fair price. Thus, according to Salovaara, Lazar d told the South Street Funds that the Notes were worth 94% of par while at the same time it advised Bucyrus that they wer e worth more. According to Salovaara, Jackson was able, through its access to this inside information, to take a "risk free profit" by buying these Notes for less than they were worth. Lazard received a 1% commission for its part in facilitating the sale. Salovaara claims Lazard never told the South Street Funds that it was advising Bucyrus at the same time that it was advising the Funds, and that it br eached its duty to the South Street Funds due to this undisclosed conflict of interest.

Salovaara sued Jackson for insider trading, in violation of the Securities Exchange Act S 10(b), and SEC Rule 10b-5. Jackson and Salovaara disagree over whether Salovaara pleaded a claim under the misappropriation theory, or whether Salovaara only pleaded a `traditional' claim of insider trading. Salovaara's complaint also asserted a state common-law claim against Jackson for fraudulent non-disclosure of material information. Salovaara sued Lazard for breach of contract and breach of itsfiduciary duty to the South Street Funds. The District Court, with the consent of the parties, turned the case over to a Magistrate Judge for resolution. We shall simply r efer to the action of the District Court when discussing the prior pr oceedings in this matter.

Jackson then filed a motion to dismiss the complaint, and a motion to transfer the case to the Souther n District of New York. The court initially granted the transfer, but the Southern District returned the case to the District of New Jersey. Jackson then moved that the complaints against it should be dismissed because it did not have a duty to disclose any information about Bucyrus in its possession to the South Street Funds. Jackson similarly ar gued that it did not have a duty to speak giving rise to common law cause of action, even if Salovaara stated one in his complaint. Finally, Jackson argued that Salovaara was not the proper party to bring this suit on behalf of the South Street Funds, because he did not meet the r equirements set forth in Fed. R. Civ. P. 23.1.

Salovaara replied that if the Notes wer e stocks and not bonds, he would clearly have alleged a case of insider trading. He argued for extension of pr ecedents regarding stocks to cover debt securities such as the bonds in question. Salovaara further replied that Jackson did have a duty to speak with regard to the common law claim. Finally, Salovaara claimed he was a proper party to bring this suit because his interests and those of the South Street Funds are aligned in this case, even though they are engaged in adversarial litigation on other matters.

Lazard responded that Counts II, IV and V of the complaint should be dismissed against it because it entered into a forum selection clause as part of an Indemnification Agreement with the South Street Funds that covers the subject matter of this suit. This forum selection clause specified that any disputes arising over the sale of the Notes must be resolved in the New York State courts located in New York County, or the federal courts located in the Southern District of New York. Salovaara replied that the Indemnification Agreement does not cover the subject matter of this suit, and that dismissal or transfer would not be appropriate even if it did. According to Salovaara, dismissal or transfer are not in the inter ests of judicial efficiency and will lead to increased costs for the parties, as well as the possibility of inconsistent verdicts in the two actions.

The District Court held that Salovaara did not state a claim under Section 10(b) of the Exchange Act or Rule 10b–5, because Jackson did not have a duty to disclose any information regarding Bucyrus to the South Street Funds. It reasoned that "there can be no fraud absent a duty to speak." Lorenz v. CSX Corp., 1 F .3d 1406, 1418 (1993) (citing Chiarella v. United States, 445 U.S. 222, 235 (1980)). It therefore dismissed these claims. It r ejected Salovaara's claim that United States v. O'Hagan, 521 U.S. 642 (1997) expanded the scope of Chiarella to include a duty to disclose any nonpublic information prior to a sale of securities. The District Court noted that O'Hagan involved a breach of duty that is not present in this case. It reasoned that a corporation does not have afiduciary relationship with its debt security holders as it does with its

7

shareholders, so O'Hagan does not apply. Jackson, the District Court held, owed no duty to the South Str eet Funds. Alternatively, the District Court held that because the South Street Funds were not the sour ce of Jackson's information, Jackson had no fiduciary r elationship with the Funds that was violated during this sale.

With regard to the common law fraud claim, the District Court reasoned that the claim could only stand if Jackson had a duty to speak to the South Street Funds as part of this transaction. As a matter of law, the District Court held that Jackson had no such duty, and it dismissed this claim as well.

Finally, the District Court agreed that Salovaara was not a proper party to bring this action, because he is in a generally adversarial position to the South Str eet Funds in other ongoing litigation, he testified in a r elated action that he had personal knowledge of the information he claims Jackson and Lazard failed to disclose to the South Street Funds, and he has engaged in a sham proceeding to manufacture evidence in his lawsuit against the Hindes, and therefore comes to court with unclean hands.

As to Lazard's motion to enforce the forum selection clause, the District Court granted it, treating it as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). It found that the Indemnification Agreement covered the subject matter of the current lawsuit, and that the balancing test required by 28 U.S.C. S 1404(a) favored dismissal so the action could be re-filed in the Southern District of New York. It reasoned that it had the power to dismiss the claim against Lazard instead of transferring the case, citing National Micrographics Sys. v. Canon U.S.A., 825 F . Supp. 671, 679 (D.N.J. 1993).

Salovaara now appeals all these rulings. Jackson has filed a new motion to dismiss the claims against it as moot, based on the fact that it has settled any outstanding claims between it and the South Street Funds. Salovaara opposes this motion, arguing that the case is not moot because we have the power to review the propriety of this settlement agreement.

8

ISSUES AND STANDARD OF REVIEW

Although we have heard oral argument and reviewed the parties' briefs regarding numerous issues, we find the two issues that follow are dispositive. Ther efore, we will not address the remainder of the issues raised by Salovaara.

I. Is Salovaara's suit against Jackson National moot as a result of the settlement agreement r eached between Jackson National and the South Street Funds?

We exercise plenary review over whether, as a matter of law, a case is moot. An appeal is moot when ther e exists no "subject matter upon which the judgment of the court can operate to make a substantive determination on the merits." Harris v. City of Philadelphia, 47 F.3d 1311, 1325–26 (3d Cir. 1994) (quotation omitted).

II. Did the District Court properly dismiss the claim against Lazard because of the forum selection clause in the Indemnification Agreement?

The interpretation and enforcement of a forum selection clause is a matter of law, and we exercise plenary review over it. See Jumara v. State Farm Ins. Co. , 55 F.3d 873 (3d Cir. 1995).

DISCUSSION

I. Is Salovaara's suit against Jackson National moot as a result of the settlement agreement r eached between Jackson National and the South Street Funds?

The only counts Salovaara currently asserts against Jackson were brought in a repr esentative capacity on behalf of the South Street Funds. Jackson and the South Street Funds have agreed to settle all disputes between them, and the South Street Funds have given Jackson a general release from any and all liability. Money has already been distributed as part of the settlement agreement. Jackson has therefore moved to dismiss this lawsuit, with the support of the South Street Funds, as moot.

The Settlement Agreement and Release wer e signed on March 23, 2000. See Cooper Aff.P 9, Ex. C. As part of this

Settlement, the South Street Funds has r eceived or will soon receive $18 million that has been held in escrow as a result of the Bucyrus bankruptcy, and Jackson has received or will soon receive $6 million. Jackson argues that because all liabilities between it and the South Street Funds have thus been resolved, there is no relief we can grant and the appeal should be dismissed.

An appeal is moot when there exists no "subject matter upon which the judgment of the court can operate to make a substantive determination on the merits." Harris v. City of Philadelphia, 47 F.3d 1311, 1325–26 (3d Cir. 1994) (quotation omitted). If events occur after the filing of a notice of appeal that moot the issues presented, then there is no remaining justiciable controversy. W e do not have jurisdiction to hear a case that cannot affect the rights the appellant wishes to assert. See North Car olina v. Rice, 404 U.S. 244, 246 (1971). Further, we may consider the question of whether a case has become moot, even if this issue was not certified for appeal. See Larsen v. Senate of the Commonwealth of Pennsylvania, 152 F.3d 240, 246 (3d Cir. 1998). Intervening events, such as the parties reaching settlement in the case, can render an appeal moot. See Blanciak v. Allegheny Ludlum Corp., 77 F .3d 690, 699 (3d Cir. 1996). Moreover, vacatur may be decreed for judgments whose review has become moot due to cir cumstances beyond the control of any of the parties or where the mootness results from the unilateral action of the party who prevailed in the lower court. See Kacher v. May, 484 U.S. 72, 82, 83, 108 S.Ct. 388, 391 (1987); United States v. Munsingwear, 340 U.S. 36, 40, 71 S.Ct. 104, 107 (1950). Because mootness by reason of a settlement is a result of the voluntary actions of the party, it does not justify vacatur of a federal civil judgment under review. See U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship, 513 U.S. 18, 29, 115 S.Ct. 386, 393 (1994).

Thus, the only question before us is whether the dispute between the South Street Funds and Jackson was properly resolved while this derivative suit was pending. A corporation may enter into a settlement despite the existence of a derivative action when doing so is in the corporation's best interests. See W olf v. Barkes, 348 F.2d

10

994, 997 (2d Cir. 1965). Jackson points out that the South Street Funds voluntarily and knowingly surr endered their right to recover damages from this appeal. Further, it points out that because none of the South Street Funds' officers or directors were named as defendants in this lawsuit, there is no reason to suspect an internal conflict of interest led the Funds to settle this lawsuit for improper r easons. The South Street Funds have noted their support for dismissal of this appeal, and they have benefitted fr om the Settlement Agreement. The benefits the South Str eet Funds have received by settling with Jackson include the r esolution of eight separate cases in four courts that have been in progress for five years, the limitation of the Funds' potential exposure to liability, and the receipt of a recovery of a total of $19 million from various proceedings. Jackson maintains that it is not in the South Street Funds' best interests to continue with this derivative suit, given the benefits it has received from the settlement, and the South Street Funds agrees with this assessment.

Salovaara responds that this appeal is not moot, because we must review the Settlement Agreement to make sure it was reached in good faith and was in the best interest of the South Street Funds. According to Salovaara, Jackson has provided only conclusory statements that the Agreement was in the South Street Funds' best interests and this is insufficient. Further, he ar gues these statements do not demonstrate a lack of collusion between Jackson and the South Street Funds. Salovaara ar gues that some of the cases settled as part of this agreement wer e frivolous, and the Agreement was of little value in this r egard. He also suggests that Eckert has a conflict of inter est that prevents him from entering into a fair Settlement Agr eement in this case.

It is clear from the case law that we do not have to accept this Settlement Agreement at face value. W e have the equitable power to review the Settlement for r easonableness and to enjoin the corporation from entering into it, either temporarily or permanently, if it is not in the best interests of the company. See Wolf, 348 F .2d at 998; Cramer v. General Tel. & Elec. Corp., 582 F.2d 259, 275 (3d Cir. 1978), cert. denied, 439 U.S. 1129 (1979). However, our

11

precedents do not require us to hold a special evidentiary hearing in every case; they merely demonstrate that we may review settlement agreements when derivative suits are pending if the circumstances so warrant.

On the present facts, we do not see anything that would trigger a need for further scrutiny of the Settlement Agreement on our part. The conflict Salovaara attributes to Eckert is so tenuous that we do not find it r elevant. Moreover, Jackson sets forth specific reasons why the Settlement Agreement was in the best inter ests of the South Street Funds, and these reasons ar e objectively reasonable. Salovaara has not shown the existence of any improper collusion or bad faith in reaching this Agreement. Moreover, Salovaara may always file a new lawsuit against the South Street Funds if he believes it br eached a duty towards the shareholders by entering into the Settlement. We do not need to re-open the settlement in the present case.

We therefore decline to intervene in this Settlement. Because there is no relief we can grant the South Street Funds beyond that provided in the Settlement Agreement, even if we were to decide in Salovaara's favor on the merits of this appeal, we will dismiss Salovaara's appeal r egarding Jackson as moot.

II. Did the District Court properly dismiss the claim against Lazard because of the forum selection clause in the Indemnification Agreement?

Lazard claims that a forum selection clause covers the dispute between it and the South Street Funds, and requires that this lawsuit be brought either in the District Court for the Southern District of New Y ork or in a New York State court located within New Y ork County. In reaching its decision to dismiss on this basis, the District Court had to interpret the forum selection clause to see whether it applied to the subject matter of this dispute. The District Court also had to decide on the proper procedure for enforcing a forum selection clause. W e will address the procedural question first, followed by the question of whether the District Court correctly interpr eted the forum selection clause.

12

## A. The Procedure for Enforcing A Forum Selection Clause

It is clear that a party may bring a motion to transfer from the initial federal forum to another federal court based on a valid forum selection clause. Such a motion is governed by 28 U.S.C. S 1404(a).5 See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32, 108 S.Ct. 2239, 2245 (1988). Transfer is not available, however, when a forum selection clause specifies a non-federal forum. In that case, it seems the district court would have no choice but to dismiss the action so it can be filed in the appropriate forum so long as dismissal would be in the interests of justice. See, e.g., Instrumentation Assoc., Inc. v. Madsen Elec. (Canada) Ltd., 859 F.2d 4, 6 n.4 (3d Cir. 1988); Central Contracting Co. v. Maryland Casualty Co., 367 F.2d 341 (3d Cir. 1966);17 Moore's Federal Practice, S111.04[4][c] (Matthew Bender 3d ed.). It is also clear that where venue would be proper in the initial forum court, provided no forum selection clause covered the subject matter of the lawsuit, it is inappropriate to dismiss pursuant to 28 U.S.C. S 1406 (allowing dismissal based on improper venue). See Jumara, 55 F.3d at 878-79.

In the present case, the forum selection clause specified that suit could be brought either in state courts located within New York County or in the United States District Court for the Southern District of New Y ork. Lazard has not filed a motion for transfer, but rather a motion to dismiss based on the forum selection clause. The District Court treated this as a motion to dismiss under Fed. R. Civ. P. 12(b)(6), but still employed the balancing test of 28 U.S.C. S 1404(a) to determine whether dismissal based on the forum selection clause was proper. The District Court found that dismissal was proper. Salovaara appeals, arguing that Lazard's motion should have been construed as a motion for transfer because the forum selection clause allowed suit

_____

5. Under 28 U.S.C. S 1404(a), a district court may transfer a civil case to another district "[f]or the convenience of the parties and witnesses, in the interest of justice. . . ." Before permitting such a transfer, a district court also must consider "all relevant factors to determine whether on balance the litigation would more conveniently pr oceed and the interests of justice be better served by transfer to a dif ferent forum." Jumara, 55 F.3d at 879 (quoting 1A Pt. 2 Moor e's P 0.345[5], at 4363).

13

to be filed in another federal forum. He notes that dismissal is only warranted when the forum selection clause pr events filing in any federal court. See 17 Moore's Federal Practice, S 111.04[4][c]; Reynolds Publishers, Inc. v. Graphics Fin. Group, Ltd., 938 F. Supp. 256, 260-61 (D.N.J. 1996).

We agree that venue was otherwise pr oper in the District of New Jersey and that 28 U.S.C. S 1406 would therefore not apply. The question is whether the District Court properly dismissed the case instead of transferring it to the Southern District of New York. In that regard, an examination of our decision in Crescent Int'l Inc. v. Avatar Communities, Inc., 857 F.3d 943, 944 (3d Cir. 1988), is particularly helpful. In Crescent, a Florida corporation, Avatar Communities, Inc. ("Avatar"), and a Pennsylvania corporation, Crescent International, Inc. ("Crescent"), entered into an agreement containing a forum selection that required "`any litigation . . . [to] be maintained' in a state or federal court in Miami, Florida." 857 F.2d 943, 944 (3d Cir. 1988) (per curiam) (emphasis added). Nevertheless, Crescent filed an action in the United States District Court for the Eastern District of Pennsylvania. In r esponse, Avatar filed a Rule 12(b)(6) motion to dismiss, arguing a breach of the forum selection clause. The District Court granted Avatar's Rule 12(b)(6) motion based on the forum selection clause and we upheld the dismissal.6 See Crescent, 857 F.2d at 944-45.

Our holding in Crescent leaves no doubt that a 12(b)(6) dismissal is a permissible means of enfor cing a forum selection clause that allows suit to be filed in another federal forum. The present case involves such a clause and accordingly Crescent contr ols. The District Court's sua sponte weighing of S 1404's factors does nothing to limit the precedential impact of Crescent, where the parties agreed

_____

6. There is much disagreement over whether dismissal (where appropriate) should be made pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3), or 12(b)(6). See, e.g.,Lambert v. Kysar, 983 F.2d 1110, 1112n.1 (1st Cir. 1993) (dismissal based on forum selection clause specifying state forum grounded on Fed. R. Civ. P. 12(b)(6), not 12(b)(3)); Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1289 (11th Cir. 1998) (collecting cases adopting each rationale and wher e forum selection clauses specified non-federal forums).

that S 1404 was inapplicable to their case. Indeed, there is nothing in Crescent that pr ecludes a district court, faced with a Rule 12 motion based on a forum selection clause, from considering S 1404 factors to deter mine whether transfer is the better course. Moreover , adding S 1404 to the mix does nothing to abrogate a district court's authority to dismiss under Rule 12. That is, the existence or non-existence of a S 1404(a) motion is not pertinent to deciding the proper scope of a 12(b)(6) motion.

We acknowledge that, as a general matter , it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss. And if a defendant moves under S 1404(a), transfer, of course, is the proper vehicle (assuming the r easonableness of the forum selection clause). But when a defendant moves under Rule 12, a district court retains the judicial power to dismiss notwithstanding its consideration of S 1404. As such, the District Court's dismissal of Salovaara's claim against Lazard was proper.

The District Court's interpretation of Rule 12(b)(6) not only comports with our holding in Crescent but is also corroborated by authority from other jurisdictions. In Security Watch v. Sentinel Sys., Inc., for example, the Sixth Circuit affirmed a Rule 12 dismissal based on a forum selection clause that specified that litigation only be brought "in the . . . Circuit Court for the City of Hampton, Virginia, or the United States District Court for the Eastern District of Virginia." 176 F .3d 369, 374 (6th Cir. 1999) (emphasis added). Additionally, Ninth Circuit case law has been read to allow Rule 12(b)(3) as a means of enforcing forum selection clauses that permit suit in state or federal courts. See Walker v. Carnival Cruise Lines, 63 F. Supp. 2d 1083 (N.D. Cal. 1999).7 Similarly, other courts that have

_____

7. Walker's interpretation ofNinth Circuit precedent (Walker explicitly relied on Argueta v. Banco Mexicano, S.A., 87 F.3d 320 (9th Cir. 1996)) finds further support in Shute v. Carnival Cruise Lines, 934 F.2d 1091 (9th Cir. 1991) ("Shute II"), despite Shute's somewhat complicated procedural history. The Shute litigation began with a summary judgment motion, in which the defendant alleged: (i) that the District Court, in the

15

addressed the scope of Rule 12 in this context have
confirmed the power to dismiss under such circumstances.
See Rooney v. Biomet, Inc., 63 F. Supp. 2d 126 (D. Mass.
1999) (granting dismissal under Rule 12(b) based on a
forum selection clause that specified certain state and
federal courts as acceptable forums); Soil Shield Int'l Inc. v.
Lilly Indus., Inc., No. C 98-1353, 1998 WL 283580 (N.D.
Cal. May 29, 1998) (same); Hunter Distrib. Co., Inc. v. Pure

_____

Western District of Washington, lacked personal jurisdiction; and (ii)
that
a forum selection clause permitted suit only in Florida's state or federal
courts. In the alternative, the defendant r equested that the case be
transferred to the Southern District of Florida. See Shute v. Carnival
Cruise Lines, 897 F.2d 377, 379 (9th Cir . 1990) ("Shute I").

The District Court granted summary judgment on personal jurisdiction
grounds without addressing the forum selection clause, and the Ninth
Circuit reversed in Shute I. In Shute I, the Court of Appeals held that
personal jurisdiction was proper, but that, since the forum selection
clause was unreasonable, that clause was legally unenforceable. The
Supreme Court granted certiorari and reversed, holding that the forum
selection clause was reasonable and enfor ceable, though the Court did
not address whether the proper mechanism for such enforcement was
summary judgment under Rule 56 or transfer under S 1406(a). See
Carnival Cruise Lines v. Shute, 499 U.S. 585 (1991).

On remand, defendant's request for transfer was not discussed;
instead, the District Court's original decision granting summary
judgment was simply affirmed. See Shute II, 934 F.2d at 1091. By so
doing, the Ninth Circuit necessarily, though implicitly, affirmed the
District Court's authority to grant summary judgment, instead of
granting transfer, in enforcing a forum selection clause that would have
allowed litigation to proceed in the Souther n District of Florida.
Although
the Shute litigation dealt only with summary judgment motions under
Rule 56, subsequent decisions have construed the principles contained
therein as relevant in the context of 12(b) motions as well. See Foster v.
Chesapeake Ins. Co., 933 F.2d 1207, 1215 (3d Cir. 1991) ("[N]o one
doubts the district court's power to dismiss pursuant to a properly
construed forum selection clause . . . .") (citing Carnival Cruise Lines,
Inc., 499 U.S. at 585) (dictum); Inter national Software Sys. v. Amplicon,
Inc., 77 F.3d 112, 114 (5th Cir. 1996) ("The Supreme Court reversed the
Court of Appeals without reaching the personal jurisdiction issue, in
effect reinstating the dismissal of the suit based on the forum selection
clause.").

Beverage Partners, 820 F. Supp. 284 (N.D. Miss. 1993) (same).

In light of the foregoing, we conclude that the District Court was not required to treat Lazar d's motion for dismissal as a motion for transfer simply because the forum selection clause specified that suit be br ought in either a federal or a state forum. Ther efore, we hold that the District Court properly dismissed Salovaara's complaint against Lazard.

B. Scope of Coverage of the Forum Selection Clause

With regard to the coverage of the forum selection clause, Salovaara argues that it was meant to apply only to lawsuits requiring the Funds to indemnify Lazar d if a third party made a claim against the South Street Funds and Lazard arising out of the sale of securities. Salovaara argues that it does not apply to disputes between the South Street Funds and Lazard. Salovaara also notes that the Agreement does not define the scope of its coverage, and that this omission indicates that it was not intended to have such a broad construction.

As the District Court noted, the Agreement pr ovided: "In connection with our role as your agent in the proposed sale of the Bucyrus-Erie Co. Secured Notes, you and we are entering into this letter agreement." (App. 186, 190). It further provides:

> This agreement and any claim related dir ectly or indirectly to this agreement (including any claim concerning advice provided pursuant to this agreement) shall be governed and construed in accordance with the laws of the State of New Y ork . . . . No such claim shall be commenced, prosecuted or continued in any forum other than the courts of the State of New York located in the City and County of New York or in the United States District Court for the Southern District of New York.

(App. 187-88, 191-92).

It is quite clear to us that this language covers the present dispute. As for Salovaara's claim that the alleged acts giving rise to the suit took place prior to the formation

17

of this Agreement, the Agreement specifically states that it covers any claim related "directly or indirectly" to the sale or to advice rendered regarding the sale of the Notes. Since this lawsuit involves that subject matter, it is covered by the forum selection clause. The District Court thus did not err when it found that the forum selection clause of the Indemnification Agreement covered the subject matter of this lawsuit.

CONCLUSION

For the reasons stated above, we dismiss the case against Jackson National as moot and affirm the or der dismissing the cause against Lazard Freres.

A True Copy:
Teste:

    Clerk of the United States Court of Appeals
    for the Third Circuit

18